No. 41,178

NELSON IVES and ROBERT IVES, *Appellees*, v. KANSAS TURNPIKE AUTHORITY OF THE STATE OF KANSAS, *Appellant*.

(334 P. 2d 399)

Opinion filed January 24, 1959.

*Ernest J. Rice,* of Topeka, argued the cause, and *Robert M. Cowger,* of Topeka, was with him on the briefs for the appellant.

*Philip H. Lewis,* of Topeka, argued the cause, and *T. M. Lillard, O. B. Eidson, James W. Porter* and *Charles S. Fisher, Jr.,* all of Topeka, were with him on the briefs for the appellees.

The opinion of the court was delivered by

PRICE, J.: Two tracts of land—one of 80 acres and the other of 160 acres—lying one mile apart, were owned by the same person. The Kansas Turnpike Authority took, by condemnation, some 45 acres from the 80-acre tract. None was taken from the 160-acre tract. An award was made solely with reference to the 80-acre tract. The owner, and his son, who operated both tracts, appealed from the award, contending that as the two tracts were, and had been, operated as a single farm unit, the assessment of damages should be based upon the entire unit rather than limited to the 80-acre tract from which the actual taking was had.

By agreement of the parties, and under the authority of G. S. 1949, 60-2704 and 60-2902, the court, in advance of trial as to the amount of damages, proceeded to determine the question:

"Whether the damages sustained by the appellants by reason of the said condemnation and taking should be considered on the basis of a 240 acre farm unit, or on the basis of an 80 acre farm unit."

There is no dispute as to the facts, most of which were stipulated. Included in the "basic stipulation" is the statement that for more than seventeen years the two tracts in question had been farmed as "one 240 acre farm unit." At the conclusion of the hearing the court held:

"a. The land taken by condemnation, consisting of 45.14 acres, was all taken from the above described tract consisting of eighty acres.

"b. The entire 240 acres, above described, owned and farmed by appellants, constituted a single farm unit at the time of the taking by condemnation.

"c. That such total farm unit, consisting of 240 acres, shall be considered in the determination of the amount allowable to appellants as compensation and damages by reason of the taking by condemnation, including the damages allowable for damage to the lands remaining after the taking by condemnation.

"d. That the fact the two tracts (80 acres and 160 acres) constituting the total farm unit were physically separated does not, as a matter of law, prevent the entire farm unit of 240 acres from being considered in the determination of the amount allowable to appellants as compensation and damages by reason of the taking by condemnation, including the amount allowable for damage to the lands remaining after the taking by condemnation."

The Kansas Turnpike Authority has appealed, and the sole question is whether two physically separated tracts of land, owned by the same person, and operated as a single farm unit, may be joined for the purpose of assessing damages in condemnation when the

actual taking is from only one tract. In other words—is the award to be limited to the tract from which the actual taking was had— or is it to be based upon damage to the two tracts considered as a single unit?

Despite the stipulation of the parties that for more than seventeen years the two tracts had been operated as one 240-acre farm unit, it is felt that in order to convey the full picture of this matter the facts should be set out in some detail. As there is no dispute concerning them, we quote from the "factual analysis" contained in the brief of the landowner and his son who operated the farm:

"1. The 240 acre farm involved herein was located a short distance east of Topeka, Kansas.

"2. The farm was wholly owned by Nelson Ives and totally operated by Robert Ives.

"3. This farm consisted of two tracts or acreages. One was an 80 acre tract. The other was a 160 acre tract.

"4. The two tracts, prior to the condemnation, were both located on the same improved (graveled) all-weather road, commonly known as the East 21st Street Road. This road is an extension of 21st Street in the City of Topeka. The length of the 80 acre tract ran along the north side of 21st Street road. The 160 acre tract was one mile easterly from the 80 acre tract, and was located on the south side of the same road. Hence, each tract had one-half mile of frontage on the East 21st Street road.

"5. In addition to the East 21st Street road, access to the 80 acre tract was available from a county road (Croco Road), intersecting with the East 21st Street road; and running along the west side of the 80 acre tract. Township roads also ran along both the west and east sides of the 160 acre tract, these roads intersecting the East 21st Street road at the northwest and the northeast corners of the 160 acre tract.

"6. Two gates and a machinery entrance were maintained along the south side of the 80 acre tract on the 21st Street road, to permit ready access between the two tracts. The principal entrance to the 160 acre tract was at its northwest corner (the nearest corner to the 80 acre tract), at the intersection of the west boundary township road and the 21st Street road.

"7. The 80 acre tract was first acquired in or about 1934 by Nelson Ives and operated by Robert Ives. During the operation of the 80 acre tract alone, only limited machinery was used, and it included horse drawn farm equipment. The 80 acre tract proved inadequate in size for a farm operation.

"8. In the latter part of 1939, Nelson Ives contracted to buy the 160 acre tract for delivery of possession, as owner, for the 1940 farm season. It was purchased for inclusion in the total farm operation conducted by Robert Ives, as operator.

"9. Even prior to taking possession as owner of the 160 acre tract, Nelson Ives, as owner, and Robert Ives, as operator, negotiated a contract with the United States Department of Agriculture, Soil Conservation Service, providing for agreed farming practices for the entire 240 acres as a farm unit. Under

this contract and plan, the Department of Agriculture made an engineering survey of the entire 240 acres as to types of soil, adaptable farm uses of various portions of the entire acreage, land contours, necessary terracing, other soil conservation practices needed and crop rotation patterns.

"10. The Department of Agriculture prepared land-use maps of the entire 240 acres with elevation and contour lines shown thereon. No monetary or cash consideration was made by the Department of Agriculture, its contribution being confined to engineering and technical advice and planning.

"11. A formal contract was executed between the Department of Agriculture and Nelson Ives, as owner, and Robert Ives, as operator, on January 17, 1940. This contract contained the following recital:

" 'This is a 240 acre general farm and the farmer should continue use of diversified farming practices.'

In the contract, the landowner agreed to:

1. Farm all terraced land on the contour.
2. Follow land use plan as shown on the land-use map.
3. Follow a good crop rotation including the use of legumes.
4. Construct all terraces according to Soil Conservation Service specifications.
5. Employ proper grazing practices on all crop and pasture land, limiting grazing within established carrying capacity.

The contract ran for a period of five (5) years. The landowner and operator further agreed to the farm being available for farm demonstration purposes.

"12. The program of improvements and farming, as set forth in the contract, were carried out by the landowner and operator.

"13. Although the contractual obligation expired after five years, landowner and operator continuously followed the same planned operation up to the time of the taking of part of the 80 acre tract for Turnpike purposes.

"14. The basic type of farm operation was the development and maintenance of cow-herd, coupled with diversified field crop plan of operation. The field crops were designed to support the cow-herd operation; and also to supply cash crops.

"15. From the beginning of the farm season in 1940, the entire 240 acres, consisting of the 80 acre tract and the 160 acre tract, was farmed as one farm unit of 240 acres; and was so regarded by the owner and operator.

"16. All allotments and other agricultural program practices were based upon a 240 acre farm.

"17. Planned field use of the entire 240 acres, as one farm unit, was followed in each year since 1940. All of the fields of the entire 240 acres were numbered for planned control; and use of each field planned in each year to fit in as part of a unitary 240 acre farm operation.

"18. Each year, the use of the fields, in the aggregate, was designed to provide:

a. Crop rotation for maximum yield consistent with soil conservation.
b. Feed for cow-herd during pasture season and during winter.
c. Cash crops for sale.

"19. Machinery was acquired to operate the entire 240 acres as a farm. The machinery could be readily moved from one tract to the other, under its own power, via the connecting township road.

"20. Cultivated pastures were developed to permit maximum grazing use by the cow-herd. The stock could be readily moved, on foot, from one tract to the other via the township road.

"21. At the time of the taking of approximately 45 acres, the entire 240 acres were operated as one farm unit; and constituted a profitable farming and cow-herd operation, with each portion of the entire tract used on a planned basis.

"22. In this area, a 240 acre farm is considered as a minimum requirement for a cow-herd type of operation. It is also considered as a minimum sized operation to economically justify and support the use of modern farm machinery.

"23. The taking of approximately 45 acres from the south side of the 80 acre tract cut off the frontage of that tract on 21st Street road, as well as reducing total available acreage to the farming operation from 240 acres to 195 acres.

"24. Access between the tracts after the taking was only available via an overpass and bridge on Croco Road over the turnpike and hence via the 21st Street road. Due to the greater distance and the bridge and overpass construction, movement of cattle and machinery must essentially be made by truck rather than on foot or under own power.

"25. Radical changes in land use have been required by the taking, not only as to lands and fields on the 80 acre tract; but also on the 160 acre tract.

"26. The taking of the acreage required conversion of fields, formerly used for crop farming, to pastures affecting land use throughout the 240 acre farm.

"27. The reduction in acreage necessitated liquidation of the cow-herd operation and conversion to a feeder cattle or deferred feeding operation. The latter is less conservative and more susceptible to market fluctuations. The entire farming operation had to be changed due to the land taking."

For convenience, appellee landowner, and his son who operated the farm, will be referred to as plaintiffs, and the Kansas Turnpike Authority as defendant.

In this appeal we are not concerned with the amount of damages to be awarded. That question has not been tried out in the court below. The only question presented is, as previously stated, whether, for the purpose of assessing damages, the award is to be limited to the 80-acre tract from which the actual taking was had, or is to be based upon damage to the two tracts considered as a single farm unit.

Defendant concedes that where two tracts under the same ownership are actually contiguous, or are contiguous "but for" a public road, railroad or stream, and are used and operated as a unit, it is proper to assess damage based on both tracts as a unit, but contends that where, as here, the tracts are physically separated (by one mile) they cannot be considered together for the assess-

ment of damage where a part of only one of such tracts is taken. It is further contended that if the trial court's ruling is correct, then the distance separating tracts would be immaterial, and that the owner of a Texas ranch, for example, would be permitted to join, for the purpose of assessment of damages, his land in the Kansas flint-hills on which he summer-pastures his cattle, thus leading to an obviously absurd result.

Narrowed down, defendant's contention is that *contiguity is* essential, and that when two tracts under the same ownership are actually physically separated by whatever distance, and a portion of only one is taken, the award must be limited to that tract even though it is used and operated in connection with the other tract as a single unit, and in support thereof cites *L. N. & S. Rly. Co. v. Wilkins*, 45 Kan. 674, 26 Pac. 16, in which it was held:

"In an action for damages for injuries to lands by reason of the appropriation of a right-of-way for a railroad company across the same, damages must be confined to the tract of land over which the right-of-way is condemned, unless the owner has other lands contiguous thereto, and so situated with respect to the same that the value is appreciably augmented by their use in connection therewith as a single farm, and the appropriation of said right-of-way has destroyed or seriously interfered with such use." (Syl. 4.)

Plaintiffs, on the other hand, while recognizing the soundness of the general principle that the taking of all or part of a particular tract does not entitle the owner to damages for other separate and independent tracts belonging to him, and that the law does not permit a landowner to inject farfetched and speculative claims of damage to independently used lands merely because a part or all of other independently used lands is taken, contend that where, as here, it is definitely established that the tracts are so integrated into one unitary operation that each tract is interdependent upon the other and that the taking from one of the integrated tracts definitely affects the other, speculation ceases to exist, and that under such circumstances refusal to permit consideration of the entire integrated unitary farm denies to the landowner the right to secure compensation for the damages done by such appropriation.

Textbook authorities and the decisions dealing with the question indicate that as a general proposition, ordinarily actual contiguity or physical connection of tracts is essential in order to create a "unit" as a basis of awarding damages where a part or all of only one of the tracts is taken—but it is not necessarily a conclusive test.

In 4 Nichols on Eminent Domain, Third Edition, § 14.31 [1], pp. 432, 433, it is said:

"Actual contiguity between two separate parcels is ordinarily essential to merit consideration as a unified tract. Actual physical separation by an intervening space between two parcels belonging to the same owner is ordinarily ground for holding that the pracels are to be treated as independent of each other, but it is not necessarily a conclusive test. If the land is actually occupied or in use the unity of the use is the chief criterion. When two parcels are physically distinct there must be such a connection or relation of adaptation, convenience and actual and permanent use as to make the enjoyment of one reasonably necessary to the enjoyment of the other in the most advantageous manner in the business for which it is used, to constitute a single parcel within the meaning of the rule."

In 29 C. J. S., Eminent Domain, § 140, pp. 982 and 983, appears the following:

"Ordinarily contiguity or physical connection between the separate parcels is essential to the requisite unity. If, however, there be no such physical connection, the separate parcels may be considered as one if they are so inseparably connected in the use to which they are applied that injury or destruction of one must necessarily and permanently affect the other. . . . It has even been held that, where two or more parcels of land are used as one enterprise and constitute such dependent elements thereof that the taking of one necessarily injures the other, they may be taken as one, even though separated by an intervening fee."

In 18 Am. Jur., Eminent Domain, § 270, pp. 910 and 911, it is said:

"When a portion of a parcel of land is taken for the public use, the owner is entitled to recover for the injury to the remainder of that parcel only, and cannot recover for injury to separate and independent parcels of land which he may happen to own in the same neighborhood. In determining what constitutes a separate and independent parcel of land, when the property is actually used and occupied, unity of use is the principal test, and if a tract of land, no part of which is taken, is used in connection with the same farm, . . . part of which was taken, it is not considered a separate and independent parcel merely because it was bought at a different time, and separated by an imaginary line, . . .

"When parts of the same establishment are separated by intervening private land, they are considered as independent parcels, unless they are so inseparably connected in the use to which they are applied that the injury or destruction of one must necessarily and permanently injure the other."

The annotation at 6 A. L. R. 2d 1197, at p. 1225, while stating that where the lands of the condemnee are separated from one another by the land of another private owner there is great difficulty in supporting a claim that one of the tracts is remaining land in relation to a location upon one of the others even though the tracts

are used for a common agricultural purpose, nevertheless recognizes that the rule is not absolute.

We mention but a few of the decisions from other jurisdictions which are cited in the above authorities:

In *Morris v. Commonwealth, Appellant,* 367 Pa. 410, 80 A. 2d 762 (1951), it was held:

"Tracts of land which are in proximity but not contiguous to each other may be regarded as one in the assessment of damages for the taking of part of one tract where all have been used as a unit so that the injury or destruction of one necessarily and permanently injures the other." (Syl. 1.)

And in the course of the opinion it was said:

"The important element governing the basis of determination of damages where non-contiguous tracts are involved, in addition to the proximity of location, is the entirety of use of the separate tracts: (citing cases). In the instant case it was admitted by appellant that all three tracts were used as a unit. Where that is so, the injury to one tract is reflected, as a consequence, in injury to the entire enterprise." (pp. 414 and 415.)

In *Essex Stor. Elec. Co., Inc. v. Victory Lumb. Co.,* 93 Vt. 437, 108 A. 426, it was said:

". . . The argument is that it is only contiguous lands that can be considered as one piece in the assessment of damages in condemnation cases, and, inasmuch as the hardwood does not stand on land contiguous to the land taken, nothing can be allowed for its depreciation. While there are cases apparently supporting this claim, and expressions are to be found in our own cases consistent with it, contiguity is not always the controlling question. . . .

"Where two or more pieces of real estate, though separated even by an intervening fee, are used as one enterprise, and constitute fairly necessary and mutually dependent elements thereof, they are in the eye of the law a single parcel, and the taking of one necessitates payment for the injury to the others." (p. 446.)

In *United States v. Waymire,* 202 F. 2d 550 (Tenth Circuit) (1953), it was said:

"Finally, the Government seeks to predicate error upon the action of the commission in including in one of its awards an item of severance damage in respect to a parcel of land not being used by its owner as a part of his ranching business. The owner was not using the particular parcel as part of his ranching operations. It was being used to graze thereon livestock belonging to another person. The property of the owner was in two parts, and the parts were not contiguous. One was essentially bottom land, meadow land, and bench land, with improvements thereon. The other was essentially grazing land and none of it was taken. The item of severance damage now in question was attributed to the parcel of grazing land. While non-contiguous, the two parts were readily adaptable for use as constituent parts of a single

economic unit—a balanced ranch, with a certain carrying capacity for live-stock and therefore of a certain market value. After the taking, the two parts remaining necessarily had a reduced carrying capacity for livestock and therefore were of less fair market value. In other words, the severance effectuated by the taking of some of the property constituted one of the two parts adaptable for use as constituent parts of the single unit, reduced the fair market value of the two parts remaining even though they were not contiguous. And since the two parcels were easily and readily susceptible of use as constituent parts of the single economic unit, the mere fact that the grazing land was not contiguous to the bottom or meadow land did not pre-clude the award of severance damage allocated to the grazing land." (p. 554.)

From the foregoing authorities and the numerous decisions cited therein, the following rules appear to be well established:

Ordinarily, and as a general proposition, actual contiguity or physical connection of tracts is essential in order to create a unit as a basis of awarding damages in condemnation where a part or all of only one of the tracts is taken.

Actual contiguity or physical connection, however, is not a con-clusive test. While actual contiguity or, if physically separated, the distance between the tracts, is an important element to be con-sidered on the question of unity of use, nevertheless, in many in-stances, depending upon the facts of the particular case, integrated use becomes the test whether two or more tracts are to be con-sidered as a unit. In other words, separation of the tracts is an evidentiary fact bearing upon, but not necessarily determinative of, the ultimate issue.

Where two or more tracts of land in proximity and under the same ownership are not contiguous or physically connected, even though separated by privately-owned land of another, they may be considered as a unit for the purpose of assessment of damages despite the taking is from only one of the tracts, provided the use to which they are applied is so inseparably connected that the taking from one necessarily and in fact injures the other.

The question of unity of use of two or more tracts is a question of fact to be determined upon the facts and circumstances of the par-ticular case, and is not to be based upon fanciful claims, speculation or conjecture, and in such cases the burden of proof is upon the landowner to prove his claim.

Application of these rules to the situation before us makes it clear the trial court was correct in ruling that the fact the two tracts were not contiguous does not, as a matter of law, prevent the entire farm unit of 240 acres from being considered in the assessment of

damages. The facts have been set out and will not be repeated. They are undisputed and speak for themselves. To hold otherwise would, under the facts of this case, deny to the landowner his right to be compensated for damage done by the appropriation, and we believe the rule is founded on logic and common everyday justice. Our decision in this matter, however, is by no means to be construed as "opening the doors" to farfetched and unfounded claims on the part of condemnees in all cases where they happen to own other nearby tracts which it may be said are incidentally or remotely affected by the taking—rather it is confined to the facts before us which conclusively establish the integrated use of the two tracts to be such that in the eyes of the law they are considered as "one 240-acre farm unit" for the purpose of assessment of damages.

With respect to the Wilkins case, mentioned earlier in this opinion, and on which defendant places reliance, it is conceded that the use of the word "contiguous" in the quoted paragraph of the syllabus lends support to its contention. On the other hand, what is said in an opinion or the syllabus thereof always is to be read and interpreted in the light of the facts and questions involved in the case. (*Steck v. City of Wichita,* 182 Kan. 206, 209, 319 P. 2d 852.) In *McIntyre v. Board of County Comm'rs of Doniphan County,* 168 Kan. 115, 211 P. 2d 59, where it was held that tracts owned by different persons cannot be considered as a whole where it is claimed that one is incidentally injured by the taking of the other for a public use, it was said (p. 119) that close analysis of the Wilkins case indicates that the court merely decided that a cause of action for injuries to land owned by one party could not be joined with an action for injuries to land owned by him and another jointly.

Be that as it may, the Wilkins case was decided in 1891, and the condemnation in the case before us was in 1955. Courts take judicial notice of the fact that in the intervening sixty-four years revolutionary changes in the economics and practices of farming have taken place. If the Wilkins case be construed as authority for the proposition that contiguity of tracts is essential in every case where the question now before us is involved—we are of the opinion that it is outmoded and not in harmony with the modern rule, and to that extent is hereby disapproved and overruled.

The judgment of the trial court was correct and is affirmed.