**GULF INTERSTATE GAS COMPANY,**
Appellant,

v.

**J. C. GARVIN et al., Appellees.**

Court of Appeals of Kentucky.

May 24, 1963.

Thomas D. Theobald, Jr., Grayson, R. Vincent Goodlett, Frankfort, Hazelrigg & Cox, Frankfort, of counsel, for appellant.

W. H. Counts, Olive Hill, H. R. Wilhoit, Grayson, for appellees.

CLAY, Commissioner.

In this proceeding appellant sought to condemn a pipeline easement through land containing a vein of fire clay. Appellees are the owners of a leasehold interest in the land. The principal controversy involves the nature of this leasehold interest and the proper measure of damages. (Agreed compensation was paid to the owners of the land and they are not parties to the suit.)

This is a second appeal. In Gulf Interstate Gas Company v. Garvin, Ky., 303 S.W. 2d 260, we reversed a judgment awarding the lessees $18,000, principally on the grounds of the incompetency of certain evidence and the excessiveness of the award. Upon a retrial a jury returned a verdict for $15,000. On this appeal the condemnor contends the evidence with respect to damages on the second trial was of the same character as that held incompetent in our first opinion, which again resulted in an excessive verdict.

On the first trial the lessees sought to prove their damages by evidence that some 53,000 *tons* of fire clay could not be removed because of the easement, and this fire clay in the ground had a value of .75¢ *per ton*. The lessees claimed the basis of damages was the product reached by multiplying the estimated number of tons lost by the unit price per ton. Upon ample authority we held this to be an improper method of computing damages for the taking of unexposed solid minerals in the ground.

On the second trial the lessees introduced testimony concerning an estimated *acreage* of fire clay which would be lost by virtue of the condemnation and the value of that fire clay *per acre*. This constituted an attempt to prove damages by fixing the quantity of fire clay in units of acres and multiplying that figure by a fixed price per unit. (There was completely unsupported testimony the fire clay in the ground was worth $6,000 an acre.) This is the precise method of measuring damages which we condemned in the first opinion. It is unrelated to the value of the land as a whole or the value of the lease. It affords no sound basis for the award of just compensation.

Since the judgment must be reversed on the ground just discussed, it appears necessary to reappraise the nature of appellees' leasehold interest and the proper measure of damages in a condemnation case of this character. While in our first opinion we pointed out that the measure of recovery was the *diminished value of the leasehold*, we perhaps were not sufficiently specific in

detailing the method by which the actual damages for this diminution could be determined. In addition, certain language used in our first opinion suggested an approach to the problem which would lead to an unstable criteria of damages. We have since exhaustively re-examined the whole theory underlying the measure of damages in condemnation cases in Commonwealth, Department of Highways v. Sherrod, Ky., 367 S. W.2d 844 (involving a lease for commercial use). That opinion, with this one, will constitute a modification and extension of our first opinion in Gulf Interstate Company v. Garvin, Ky., 303 S.W.2d 260.

█ In our first opinion we assumed that a lease such as the one before us constituted a sale and conveyance of title to the minerals in place and a severance of the minerals from the surface. While this concept might be acceptable for some purposes, it is not a helpful hypothesis for determining damages in a condemnation case. As a matter of fact, it suggests the mineral estate may be evaluated separately from the land, of which it is a part, taken or injured. This may not be done.

█ In our first opinion we cited the following authorities which establish the accepted rule: where land containing minerals is condemned, the quantity and quality of the minerals may be properly considered as *affecting the market value of the land* but they *cannot be valued separately*. Nedrow v. Michigan-Wisconsin Pipeline Company, 245 Iowa 763, 61 N.W.2d 687; Hollister v. Cox, 131 Conn. 523, 41 A.2d 93, 156 A.L.R. 1412; Saulsberry v. Kentucky & West Virginia Power Co., 226 Ky. 75, 10 S.W.2d 451; 4, Nicols on Eminent Domain, section 13.22(1); 18 Am.Jur., Eminent Domain, section 242 (page 878). See also Sgarlat Estate v. Commonwealth, 398 Pa. 406, 158 A.2d 541; State by and through State Highway Commission v. Arnold, 218 Or. 43, 341 P.2d 1089; Georgia Kaolin Co. v. U. S., 5 Cir., 214 F.2d 284.

Elsewhere in the first opinion we suggested that the diminished value of a lease-

hold could be established on the basis of the reasonable worth of the fire clay in place. This would of course require evaluating it apart from the land as a whole, which cannot be done in a legally acceptable manner. The inutility of this measure of recovery is immediately apparent for this reason: It is practically impossible to obtain credible evidence of the reasonable market value of *fire clay in place* because it is not bought and sold as such and has no market value as such.

█ In addition this measurement of damages has no relationship to the value of the land as a whole and it is entirely possible that an award for this interest in the land would exceed such latter value. The condemnor cannot be required to pay as just compensation for separate interests in land a sum in excess of the market value of the whole. Commonwealth, Department of Highways v. Sherrod, Ky., 367 S.W.2d 844; Orgel on Valuation Under Eminent Domain (2d Ed.), Vol. 1, section 109 (page 461); Lewis on Eminent Domain (3d Ed.), Vol. 2, section 716 (page 1253).

There are two old Pennsylvania cases which stated the measure of damages for *exposed* minerals as being the reasonable market value of the minerals in place. Lehigh Coal Co. v. Wilkes-Barre & Eastern R. Co., 187 Pa. 145, 41 A. 37; and Cole v. Ellwood Power Co., 216 Pa. 283, 65 A. 678. The first case involved a culm bank of coal, which the court treated as *personalty*. (Compare United States v. 12.75 Acres of Land, D.C., 95 F.Supp. 998, where exposed sand was taken.)

The second case involved boulders and stone in a rock quarry. The court in stating the proper measure of damages to be "the actual value of the stone in place" was distinguishing this from the speculative value of the stone when cut and sold in the market. If the court was treating the stone as personalty, the opinion appears sound. If otherwise, that case is without authoritative support. It is contrary to the prior decision of Reading & Pottsville R. Co. v.

Balthaser, 119 Pa. 472, 13 A. 294, and has in effect been completely repudiated by other Pennsylvania decisions, the last one of which is Sgarlat Estate v. Commonwealth, 398 Pa. 406, 158 A.2d 541. The Pennsylvania cases are also carefully examined in Nedrow v. Michigan-Wisconsin Pipeline Co., 245 Iowa 763, 61 N.W.2d 687, wherein it is held that *solid minerals cannot be evaluated separately* from the land of which they form a part.

A theory that a solid mineral underground can or may be evaluated as a separate piece of real estate apart from the surface for condemnation purposes is unsound and contrary to all of the carefully considered cases on the question. The damages in this case cannot therefore be based upon a nonexistent reasonable market value of the fire clay in place.

■ The condemnor contends that at most the lease may be construed as an executory sale of personalty coupled with an incidental license to remove the fire clay, citing United States v. 1,070 Acres of Land, D.C., 52 F.Supp. 378. Without expressing approval or disapproval of that opinion, it is clearly distinguishable because it involved *exposed* sand and gravel treated as *personalty,* which is different from solid minerals in the ground. See Kincaid v. Mc-Gown, 88 Ky. 91, 4 S.W. 802; State by and through State Highway Commission v. Arnold, 218 Or. 43, 341 P.2d 1089.

■ The condemnor also contends that the particular lease in this case did not create a sufficient interest in the land to have compensable value. It is argued the lease is nothing more than an option to purchase fire clay at a fixed (royalty) price per ton. Cases are cited to the effect that an option to purchase is not a compensable interest in land.

We are not inclined to construe this lease as an option to purchase either the fire clay or the land of which it is a part. In any event, such characterization of the lessees'

rights is not determinative of whether or not they are compensable.

In City of Ashland v. Kiddle, Ky., 347 S.W.2d 522, it was held that a lease contract, giving the lessee the right of first refusal in the event the lessor decided to sell the leased premises (no price being fixed), did not constitute such an interest in land as to be compensable. While the decision suggests that the right of first refusal was not compensable because it did not constitute an "interest" in the land, a sound rationale of the decision is that the loss of the right was not compensable *because it had no value when the land was condemned.* This will become apparent as we proceed.

■ The Kiddle opinion cited authorities to the effect that an option to purchase land at a fixed price does not constitute an "interest" in the real estate. In the light of our opinion in Commonwealth, Department of Highways v. Sherrod, Ky., 367 S.W.2d 844, this indicates an unworkable approach to the problem. Much difficulty has been encountered in the past by first undertaking to determine if a particular right in land (other than fee ownership) constituted an interest therein, and then attempting to ascertain its value and the damages sustained. A better approach is to first ascertain whether the existence of the right affects the market value of the land if sold subject thereto. If, at the time of condemnation, any outstanding right enforceable against the owner of the fee reduces the market value of his title, it is such an interest that the owner of the right must be compensated for its taking or impairment. Thus the nature of the interest is not the controlling factor.

■ The basic measure of damages in condemnation proceedings must of necessity be anchored to the fair or reasonable market value of the land (that is, a particular tract) being taken. To slip this anchor means drifting on unchartered seas which leads to speculative valuation involving special uses and potential business profits.

While the ideal of absolutely "just compensation" cannot always be reached, there must be legal rules which insure the fairest practical result to both the condemnor and the condemnee. Market value of land, as land, has from time immemorial proven the most practical basis for the measurement of damages in condemnation cases. See United States v. 12.75 Acres of Land, D.C., 95 F.Supp. 998.

■■■ If no lease were involved, the proper measure of damages would be the difference in the fair market value of the land before and after the taking. This amount is all that the condemnor is required to pay. The fact that the interests in the land may be separately owned does not affect this basic method of determining just compensation. See Commonwealth, Department of Highways v. Sherrod, Ky., 367 S.W.2d 844.

We have heretofore pointed out that the lessees may have a compensable interest in the land and our objective is to secure for them just compensation for the loss in value of that interest. If it has value, then its diminution must have a proportionate relationship to the diminution in the market value of the land as a whole. There is simply no other practical method of proving proper damages.

■■■ In order to establish a right to damages, appellees may properly introduce evidence concerning the estimated amount of fire clay in the land, the terms of its lease, and any other factors which tend to establish that the leasehold interest had value. The purpose of this proof would be to show the existence of the lease had decreased the market value of the land as a whole. As will be apparent from the instructions hereafter set out, the lessees are entitled to damages only if the outstanding leasehold interest has diminished that market value prior to the taking. This will fix the percentage of ownership interest of the lessees in the land.

■■■ The damages will be based upon the extent to which the easement diminishes the fair market value of the land as a whole, and consequently evidence (of the kind heretofore introduced) pertaining to the extent to which the lessees' particular right to mine has been impaired is irrelevant.

Substantially adopting the instructions set forth in Commonwealth, Department of Highways v. Sherrod, Ky., 367 S.W.2d 844, instructions of the following character should be given to the jury:

■■■ A. You will find the fair market value of the tract of land owned by the lessor, which is subject to this fire clay lease, as a whole immediately before the taking, giving consideration to the fact that it may be leased for mining purposes but evaluating it as if free and clear of the lease.

B. You will next find the fair market value of the same tract of land immediately before the taking, if sold subject to the defendant's lease.

C. You will next find the fair market value of such tract immediately after being subjected to plaintiff's easement, evaluating it as if free and clear of the lease.

The above instructions should be supplemented by proper instructions briefly outlining the terms of the lease and the scope of the easement. In addition, an instruction should be given which defines "fair market value".

The findings of the jury under Instructions A, B and C above are the basis upon which damages, if any, shall be awarded the lessees. The trial court shall make the following computations:

(1) Subtract the figure found under C from the figure found under A. The remainder is the total damages for which the condemnor could be liable.

(2) If B is the same, or more than A, then no award shall be made to the lessees

because these findings would be tantamount to a finding that the leasehold had no value as an interest in this land.

(3) If B is less than A, subtract B from A and then divide the remainder by A. This figure will be the percentage of ownership interest the lessees are deemed to have had in the tract before the condemnation.

(4) Multiply the total damages found under (1) above by the percentage found under (3) above. The product will be the lessees' share of the total damages.

This opinion shall be deemed to supersede the opinion on the first appeal of this case (Gulf Interstate Gas Company v. Garvin, Ky., 303 S.W.2d 260) to the extent of any inconsistency.

The motions of the appellant filed subsequent to the filing of a petition for rehearing on this appeal are overruled.

The judgment is reversed with directions to grant a new trial. The costs on this appeal shall be equally divided between the parties.