468 P.2d 306

The STATE of Idaho, ex rel. R. Doyle SYMMS, Howard B. Thomason, and C. Ed Flandro, Idaho Board of Highway Directors, Plaintiff-Appellant,

v.

NELSON SAND AND GRAVEL, INC., an Idaho corporation, Defendant-Respondent.

No. 10470.

Supreme Court of Idaho.

April 3, 1970.

Rehearing Denied May 18, 1970.

Faber F. Tway and Anton Hohler, Idaho Department of Highways, Boise, for appellant.

Elam, Burke, Jeppesen, Evans & Boyd, Boise, for respondent.

McFADDEN, Chief Justice.

On December 22, 1967, the State of Idaho by complaint instituted this action seeking condemnation of a portion of land owned in fee by the defendant-respondent Nelson Sand and Gravel, Inc., to be used by the state for the Boise bypass section of Interstate 80N. Adjoining the property owned by respondent is a forty acre tract of land on which respondents had a lease from the state. The state did not mention this leased land in the condemnation action. However, the respondent in its amended answer to the complaint sought severance damages and alleged in its counterclaim that it held a lease on the state land and was entitled to compensation for the taking of the land held under the state lease.

The following diagram sets out the various parcels of land involved in the present action, the relationship of each parcel to the other and the boundaries of the Interstate Highway through the land. Tract A is land owned in fee by respondent; tract B is land purchased by respondent, with mineral rights reserved to the State of

Idaho; tract C is land owned by the State of Idaho, but originally leased to R. O. Nelson and H. O. Nelson, and later assigned to the respondent corporation.

Respondent Nelson Sand and Gravel, Inc., has been engaged in the mining, processing and selling of gravel in the Boise area since 1948. Its plant and operations are located on the tract of land denominated tract A in the above diagram, which land is owned by respondent in fee. The gravel pits from which respondent takes the gravel for processing through the plant are located on tract C. In 1953 R. O. Nelson and H. O. Nelson, the stockholders of respondent, obtained in their individual names a ten year lease from the State of Idaho on the gravel rights on tract C. This lease was renewed in 1963 for an additional ten year period; the renewal

being again taken in the names of the two Nelsons as individuals. Subsequent to institution of this action in 1968, but prior to filing of respondent's answer and counterclaim, the Nelsons and their wives assigned this state lease to respondent corporation.

Under the terms of the state lease, the lessees had the right to remove gravel from the premises and to use so much of the surface area of tract C as was necessary and reasonably incidental to the removal of the gravel from the premises. The lease also provided that the lessees would pay twenty-five cents per acre per annum in advance, as well as ten cents per cubic yard of gravel taken from the premises. The lease provided that it was for a ten year term "with the preferential right in the lessee of renewal under such readjustment of the terms and conditions of lease as the State Board of Land Commissioners may determine to be necessary in the interest of the lessor, unless otherwise provided by law at the time of the expiration of this lease." Paragraph 16 of the lease provides:

"That there is expressly reserved the right to permit for joint use such easement or right of way upon, through or in the lands hereby leased, occupied or used as may be necessary or appropriate to the working of the same or of other lands containing mineral deposits, and the treatment and shipment of products thereof by or under authority of the lessor, its lessees or permittees, and for other public purposes."

Respondent, prior to the present action, had an easement over tract B, but later purchased the surface rights to tract B in order to assure a shorter haul of the gravel from the gravel pits on tract C to the plant on Tract A. As illustrated in the diagram, tract B adjoins both tracts A and C, and connects the two of them. However, along the northerly boundary of tract B the Idaho Power Company owns a strip of land 175 feet in width, which strip has been used as a public roadway.

In 1967 the state contacted the respondent regarding acquisition of 5.48 acres of tract B for the proposed interstate highway. The parties could reach no agreement as to the compensation to be paid, but on November 15, 1967 the state and respondent executed a memorandum agreement authorizing the state to take possession of 5.48 acres on tract B for which the state paid into court for respondent's use the sum of $3,448.00. On December 22, 1967, the state then instituted this action for condemnation of the 5.48 acres and served summons on respondent.

The state did not negotiate with respondent concerning any of the land on tract C through which the interstate highway passed and did not seek condemnation of such right of way in its complaint. On April 2, 1968, however, the state notified the respondent by mail that respondent would no longer be permitted to remove any gravel from that portion of tract C to be used for the interstate right of way.

On January 30, 1968, respondent answered the complaint, alleging it owned another parcel of property which would be injured by reason of the taking of a portion of tract B. On May 31, 1968, respondent filed an amended answer and counterclaim wherein it alleged that as of the date of the state's complaint and service of summons, respondent was the equitable or beneficial owner of the leasehold estate on tract C and that it was entitled to compensation for the taking by the state of the right of way out of this tract and for severance damages done to tract A by virtue of the taking of the land for highway purposes out of both tracts B and C. The counterclaim alleged that the respondent obtained nearly all of its gravel from the leasehold on tract C and that the loss of gravel occasioned by the taking by the state would lessen the value of tract A for use as a location for its gravel processing plant.

The state replied to the counterclaim and moved for summary judgment on the counterclaim on the ground that the lease issued to respondent by the state reserved

to the state an easement for public purposes which entitled the state to appropriate without compensation to respondents the land needed for highway purposes over tract C. The court denied the motion and the case proceeded to trial.

Following trial before a jury, which was given interrogatories to answer, the jury answered the interrogatories to the effect that the value of the land taken by the state on tract B was $13,760.00, and that the damage done to the remaining land by reason of the taking was $17,000.00. As to the leased land, the jury found in answer to the interrogatories that the fair market value of tract C before the taking, free and clear of the lease, was $80,000.00; that the fair market value of this land before the taking, if sold subject to the lease, would be $40,000.00; and that the fair market value of the land, free and clear of the lease, after the taking was $40,500.00. The court, accepting these valuations as returned by the jury, determined the total damage to tract C occasioned by the taking for the highway to be $39,500.00, which represented the difference in value of the tract free and clear of the lease before the taking ($80,000.00), and the value free and clear of the lease after the taking ($40,500.00). The court then determined that since tract C was worth $80,000.00 if sold free and clear of the lease, but was worth only $40,000.00 if sold subject to the lease, the leasehold interest was worth $40,000.00 or 50% of the total value of tract C. The court determined respondent lessee was entitled to 50% of the damages for taking of tract C ($39,500.00), and awarded respondent $19,750.00 for the taking of the right of way out of the leased premises. Totaling all the items awarded, i. e. (1) $13,760.00 [1] for value of land owned by respondent in fee; (2) $17,000.00 as severance damages; and (3) $19,750.00 for taking of right of way from the leased property, the court entered judgment for respondent for $50,510.00.

The state appealed from the judgment, contending among other things, that the trial court erred in awarding damages for the taking of the right of way because of paragraph 16 of the lease, supra, which reserves a right of way to the state. It is the state's contention that by this paragraph in the lease it was authorized to appropriate the land needed for the interstate highway without the necessity of compensating the lessee for the taking.

■ It is our opinion that the purpose of paragraph 16 of the lease, supra, is to reserve to the state the right to grant a right of way across the lessee's leasehold to other lessees or permittees to reach adjacent land containing mineral deposits and to cross the lessee's leasehold in order to ship minerals mined on other leaseholds to market. To read the phrase "and for other public purposes" literally, as the state would have us read it here, would mean that the state could grant a leasehold one day and appropriate the entire leasehold the next day without any liability to the lessee as long as the appropriation was for a public purpose. It is our conclusion "and for other public purposes" has reference to uses by other lessees of the state lands only.

■■ The state also contends, however, that in any event the respondent corporation is not entitled to compensation for appropriation of the leasehold because it was not the owner of the leasehold on the date the complaint was filed in the present case. The state contends that at that time the Nelsons as individuals were the lessees and that the corporation therefore had no compensable interest in the leasehold. It is well settled, however, that the owner of land at the time of the condemnation is the party entitled to compensation for the taking. 27 Am.Jur.2d Eminent Domain § 248 at p. 18. In the present case the respondent corporation was not the owner of the leasehold at the time the complaint was

1. It is noted that there is an error in the judgment. In copying figures from special verdict, the figure given by the jury of $13,760.00 was apparently miscopied into the judgment where the figure $13,706 was used.

filed, but it must be noted that the complaint in the present case did not seek to condemn any interest in the leased tract. The state did not attempt to appropriate the leased tract until April 2, 1968 at which time the state advised the respondent that it could no longer mine gravel in the area of the new interstate highway. At this time the respondent had become the lessee of the mineral rights in tract C by assignment of the lease from the Nelsons. As owner of the leasehold interest at the time of the taking, the respondent was entitled to any award of damages for the appropriation.

Although no formal condemnation action was ever instituted against tract C, the respondent's counterclaim for damages for the taking of the leasehold interest is in the nature of an inverse condemnation. In Renninger v. State, 70 Idaho 170, 213 P.2d 911 (1950), this court recognized the validity of an inverse condemnation action by which a property owner institutes an action against the state to recover just compensation for an appropriation of land when the state has taken an interest in land and refused to institute eminent domain proceedings to determine the amount of just compensation.

A cause of action for inverse condemnation arises at the time of actual interference by the condemnor with the owner's right to use the property. 30 C.J.S. Eminent Domain § 399 pp. 475–480. At the time of such interference in the present case, the respondent was the owner of the leasehold interest and was therefore the proper party to institute inverse condemnation proceedings which it did by means of the counterclaim interposed here. The appellant's contention that the respondent is not entitled to damages for the condemnation of the leasehold because it was not the owner at the time of condemnation is, therefore, without merit.

The appellant also contends that the respondent is not entitled to severance damages to tract A by virtue of the taking of a portion of the leasehold interest in tract C.

The appellant argues that severance damages are allowed for damage to a parcel of land separate from the parcel condemned only when both parcels are used as a single unit, are physically contiguous and are both owned in fee by the same individual. See People By and Through Dept. of Public Works v. Hemmerling, 58 Cal.Rptr. 203 (Cal.App.1967); United States v. Honolulu Plantation Co., 182 F.2d 172 (9th Cir. 1950).

In the present case there is no doubt that tracts A and C are used as a single unit. The gravel mined on tract C is the major source of supply for respondent's gravel plant and operations on tract A. There is therefore clearly a unity of use between these two tracts.

The appellant, however, maintains that contiguity is lacking in the present case because the Idaho Power Company owns a 175 foot strip of land between tracts A and B, thus separating tract A from the other two tracts. It is clear from the record, however, that the land owned by the Idaho Power Company is a roadway which the company has allowed the public to use for several years. Its existence in no way interferes with the use of tracts A, B and C as a single unit. Contiguity of two tracts has generally been held to be a prerequisite for severance damages because it is more likely that contiguous tracts will be used as a unit than if the tracts are not contiguous. Where, however, it is clear that there is unity of use between two tracts, a slight separation of the tracts generally will not preclude an award of severance damages. Ives v. Kansas Turnpike Authority, 184 Kan. 134, 334 P.2d 399 (1959); People v. Hemmerling, supra. It is stated in 27 Am. Jur.2d Eminent Domain § 315, pp. 134–137 at p. 134 that

"According to the prevailing view, in determining what constitutes a separate and independent parcel of land, when the property is actually used and occupied, unity of use is the principal test, and if a tract of land, no part of which is taken, is used in connection with the same farm,

or the same manufacturing establishment, or the same enterprise of any other character as the tract, part of which was taken, it is not considered a separate and independent parcel merely because it was bought at a different time, and separated by an imaginary line, or even if the two tracts are separated by a highway, street, alley, railroad, or canal or other body of water. [at 134–135].

\* \* \* \* \* \*

"Even if the owner's land is divided into parts in such manner as might otherwise raise the issue of separateness, if he is devoting the parts to a single use, and they lie in such proximity as to be in effect united by that use into a single property, they will be regarded as a whole for the purpose of assessing damages for the taking of a part." (at 136).

It is our opinion that in view of the unity of use in the present case, the separation of the tracts involved herein by the roadway does not destroy the contiguity of the tracts so as to defeat a claim for severance damages.

The appellant also argues that there is no unity of title between the two tracts and that severance damages should be disallowed for that reason. There is strong authority to the effect that severance damages will be allowed only when title to the parcel of land taken and title to the remaining tract are united in a single person. McIntyre v. Board of County Commissioners, 168 Kan. 115, 211 P.2d 59 (1949); Kansas City v. Stith, 409 S.W.2d 193 (Mo. 1966); City of Menlo Park v. Artino, 151 Cal.App.2d 261, 311 P.2d 135 (1957); Duggan v. State, 214 Iowa 230, 242 N.W. 98 (1932); Glendenning v. Stahley, 173 Ind. 674, 91 N.E. 234 (1910); Montana State Highway Commission v. Robertson & Blossom, Inc., 441 P.2d 181 (Mont.1968).

The appellant maintains that since the respondent corporation owned tract A and the Nelsons as individuals owned the leasehold on tract C, there was no unity of title in the present case. We have already noted, however, that at the time of the condemnation of the leasehold, the respondent as assignee, had become the lessee. As of that time, therefore, the respondent owned tract A in fee and a leasehold interest in tract C. Although an ownership interest in each of these tracts was therefore united in the respondent, several cases have applied a more subtle version of the unity of title rule, requiring not only that the same person own both tracts, but that he have an absolute fee ownership in both tracts. See Tillman v. Lewisburg & N. R. Co., 133 Tenn. 554, 182 S.W. 597 (1916); United States v. Honolulu Plantation Co., supra; Glendenning v. Stahley, supra. Under this line of authority a fee ownership in one tract cannot be combined with a leasehold interest or undivided interest in another tract to claim severance damages.

There is, however, a contrary line of authority which holds that as long as the same person has an ownership interest in each of two tracts, he need not have the same quantity or quality of estate in each tract to claim severance damages, Chicago & Evanston R. R. Co. v. Dresel, 110 Ill. 89 (1884); People By and Through Dept. of Public Works v. Hemmerling, 58 Cal.Rptr. 203 (Cal.App.1967); State ex rel. La Prade v. Carrow, 57 Ariz. 429, 114 P.2d 891 (1941). It is stated in 27 Am.Jur.2d Eminent Domain § 320 at p. 143 that

"There seems to be a conflict in the cases, however, as to whether it is requisite for unity of ownership that the condemnee have the same quantity or quality of 'estate or interest' in all parts of the two tracts claimed as a single unit, some cases apparently taking the view that he must, others taking a contrary view and a number holding that severance damages may be allowed where the owner of one tract has a certain right or interest, although short of ownership, in the other tract."

Similarly it is stated in 29A C.J.S. Eminent Domain § 140 at p. 595 that " \* \* \* it is not a requisite for unity of ownership to have the same quantity or quality of interest or estate in all parts of the tract." Some

cases have even gone so far as to hold that unity of title is not needed at all. See Guptill Holding Corp. v. State of New York, 43 Misc.2d 631, 251 N.Y.S.2d 766 (1964).

■ Since there are no Idaho authorities delineating the need for unity of ownership, this court is faced with choosing between two competing lines of authority. It is our opinion that unity of use is the principal factor to be considered in determining whether a person is entitled to severance damages, but that unity of title and contiguity must also be considered. We fail to see, however, any compelling reason for requiring that a person own a fee simple interest in each of two tracts. A mineral leasehold is a substantial property interest. Indeed, a mineral leasehold on land with little surface value but great mineral wealth constitutes the greatest portion of the land's value. It is folly to ignore the fact that a person's remaining land is seriously damaged by appropriation of a leasehold interest and deny severance damages merely because the owner did not own the fee in both tracts. Accordingly, we choose to follow that line of authority which allows severance damages where there is unity of title between two tracts even though the quantity and quality of the title or estate in the two tracts differ. Chicago & Evanston R. R. Co. v. Dresel, supra; People By and Through Dept. of Public Works v. Hemmerling, supra; State ex rel. La Prade v. Carrow, supra; 27 Am. Jur.2d Eminent Domain § 320 p. 143; 29A C.J.S. Eminent Domain § 140, p. 595.

■ It is clear that a leasehold interest is a property interest and that a lessee is entitled to compensation for its condemnation. 2 Nichols on Eminent Domain § 5.23 p. 55 (rev. 3rd ed. 1963). The appellant however, contends that the trial court erred in allowing a witness for the respondent to testify as to the value of the leasehold because his valuation was based upon a capitalization of income and upon speculative and uncertain figures. It is the appellant's contention that this witness valued the leasehold by multiplying the estimated quantity of gravel remaining in the leased tract by the estimated price per yard and by considering the estimated future gravel market in Boise. Such an approach the appellant argues is too speculative to be admitted as evidence.

■ It is quite universally held that a mineral leasehold cannot be valued by multiplying estimated quantity by estimated price per unit and capitalizing the resulting income. Eisenring v. Kansas Turnpike Authority, 183 Kan. 774, 332 P.2d 539 (1958); Gulf Interstate Gas Co. v. Garvin, 368 S.W.2d 309 (Ky.1963); Knox Lime Co. v. Maine State Highway Comm., 230 A.2d 814 (Me.1967). It is equally well settled however that in valuing an interest such as a leasehold, which is not ordinarily bought and sold on the market and which therefore has no recognized market value, the court can consider its actual or intrinsic value and that the quantity and quality of minerals and price per unit can be considered as factors bearing on the intrinsic value of the land. Gulf Interstate Gas Co. v. Garvin, supra; Eisenring v. Kansas Turnpike Authority, supra. In Knox Lime Co. v. Maine State Highway Commission, supra, the Maine Superior Court, in dealing with the valuation of a mineral interest, held that where market value could not be ascertained,

"'* * * it is proper to adduce evidence upon all matters affecting probable selling price, such as location, condition, improvements, quality of land or coal, and any other element of value that would influence the mind of a purchaser.' [230 A.2d at 824]

\* \* \* \* \* \*

"We realize the estimated quantity and quality of the mineral in the earth are important considerations to the purchaser and seller. So are the prices at which the products are being sold and the presence or absence of a demand for them. While, as we have said, a valuation based upon a multiplication of these elements is so speculative that it must be rejected, such

facts themselves may be considered by the knowledgeable expert and by the court and jury, as may any advantageous or disadvantageous situations as to production or marketing, but 'only as contributing factors to the ascertainment of market value rather than as the criterion thereof.' See Footnote, 4 Nichols on Eminent Domain, 3rd Ed. § 13.22(2); Gulf Interstate Gas Company v. Garvin, Ky., 368 S.W.2d 309 * * *." (230 A.2d at 827)

Similarly the Kansas Supreme Court in Eisenring v. Kansas Turnpike Authority, supra, pointed out that while it would be improper to value a sand lease solely on the basis of capitalization of estimated future profits, such profits could be considered along with other factors insofar as they influenced the value of the land for a particular business or use.

Any prospective purchaser of the respondent's mineral leasehold would want to know something about the estimated quantity and quality of gravel remaining, the future market for gravel in Boise, the cost of hauling the gravel to a processing plant and the productivity of the leasehold when used as a gravel source. All of these factors influence the value of the leasehold and are really the only tests of value in the present case because gravel leaseholds are not ordinarily bought and sold on the open market. In Idaho-Western Ry. Co. v. Columbia Conference of Evangelical Lutheran Augustana Synod, 20 Idaho 568, 119 P. 60 (1911), this court held that in the absence of a market value for a property interest, proof of its intrinsic value is proper and that in proving intrinsic value a property owner

.'' 'should be given every opportunity to disclose to the jury the real character of the property, its location, its surroundings, its use, its improvements, if any, and their age, condition and quality, its adaptability to any special use or purpose, its productiveness and rental value, and, in short everything which affects its salability and value as between buyers and sellers generally.' " 20 Idaho 578–579, 119 P. 63. To the same effect is State ex rel. Rich v. Halverson, 86 Idaho 242, 384 P.2d 480 (1963).

The respondent corporation called Mr. Mervin Christensen, a real estate appraiser in Boise, to testify concerning the value of the leasehold on tract C. Although the appellant never attacked Mr. Christensen's qualifications as a real estate appraiser, which were fully developed in the record, the appellant argues that he is not an expert in the valuation of leaseholds and that there was no basis for his estimates as to the future market for gravel in the Boise area. It does not appear, as the appellant contends, that Christensen's determination of the valuation of the leasehold was based on a capitalization of estimated profits, which of necessity would be dependent on an estimate of future market for gravel, but, on the contrary, various factors were employed by him which affected the valuation of the leasehold, including among other things, estimated market, the quality and quantity of the gravel, and the proximity of the leasehold to the processing plant. All of these items were fully developed in the record. While technically this witness may not have been an expert in the valuation of "gravel leasehold interests" yet there is no question as to his qualifications generally as a real estate appraiser. The trial court did not err in admitting this testimony for consideration of the weight to be given it by the jury. See Idaho Western Ry. Co. v. Columbia Conference of Evangelical Lutheran Augustana Synod, supra, and State ex rel. Rich v. Halverson, supra.

The appellant also asserts that the trial court erred in allowing R. O. Nelson to testify concerning the value of the processing plant on tract A because this tract was not described in any of the pleadings. The appellant argues that in claiming damages for the taking of land, the land must be described in the pleadings with particularity. This is a correct statement of law. Boise Valley Constr. Co. v. Kroc-

ger, 17 Idaho 384, 105 P. 1070 (1909). In the present case, however, the respondent is not claiming damages for a taking of tract A because none of that tract was apropriated. Evidence as to the value of the processing plant located on that tract was permitted insofar as it shed light upon the value of the leasehold on tract C and the damage to tract A by the taking of the right of way over tracts B and C. No complaint is made that the court did not adequately instruct the jury that they could not consider damage to the respondent's business on tract A as a separate item of damages. Indeed, the court gave a rather forceful interpretation to this effect.[2] It is our opinion that the court did not err in allowing R. O. Nelson to testify as to the value of the processing plant.

Finally appellants contend that the trial court erred in allowing witnesses for the respondent to testify as to the circuity of travel from tract C to the processing plant on tract A made necessary by construction of the interstate highway. The testimony establishes that the respondent will have to travel approximately an additional four and one half miles to get gravel from tract C to the plant on tract A. The appellants argue that circuity of travel or inconvenience is not a compensable item in a condemnation action. See James v. State, By and Through Idaho Bd. of Highway Directors, 88 Idaho 172, 397 P.2d 766 (1964); Mabe v. State ex rel. Rich, 86 Idaho 254, 385 P.2d 401 (1963); and Mabe v. State ex rel. Rich, 83 Idaho 222, 360 P.2d 799 (1961). Even though circuity of travel as distinct from a total destruction of access, may not be compensable, this court has held that substantial impairment of an access which decreases the market value of land remaining after condemnation is compensable. Mabe

v. State ex rel. Rich, 83 Idaho 222, 360 P. 2d 799 (1961); State ex rel. Rich v. Fonburg, 80 Idaho 269, 328 P.2d 60 (1958).

 In the present case there is adequate evidence that the increased distance of hauling the gravel will decrease the value of respondent's remaining land for use as a gravel processing plant. Certainly a prospective purchaser would not pay as much for the leasehold or for tract A after the condemnation increased the distance of hauling gravel to the plant as he would have before. It is our opinion, therefore, that the court properly admitted evidence as to circuity of travel insofar as it related to the market value of the remaining land.

In summation, it is our opinion that the respondent corporation was the owner of the leasehold interest as of the date of the appropriation of a portion of tract C and that it was entitled to damages for the taking of the leasehold and severance damages to tract A. Additionally, we fail to see any error in the admission of evidence relating to valuation of the leasehold interest or circuity of travel. The judgment of the district court is therefore affirmed.

Costs to respondent.

DONALDSON and SPEAR, JJ., and DUNLAP, D. J., concur.

OLIVER, District Judge (dissenting).

My dissent is directed to that portion of the majority opinion which deals with Paragraph 16 of the lease entered into between plaintiff and defendant. The majority opinion would limit the rights of the state under that paragraph to simply the reservation of the right to grant rights of way across defendant's leasehold to *other lessees* or *permittees* to reach adjacent land containing mineral deposits and to cross the

---

2. "Although evidence has been introduced with reference to business conducted upon the property being condemned, such evidence was admitted solely for the purpose of showing the use to which this property was adapted, and should be considered by you for such purpose only. It is the real property of the defendants not their business, which is condemned by the state, and it is for this real property only that you are to award compensation. While loss of profits is not an element of damages in a condemnation proceeding, income derived from a business is a factor which may be considered in arriving at the fair market value of property."

defendant's leasehold to ship minerals mined on other leaseholds to market. I cannot agree. The paragraph of the lease in question reads:

"That there is expressly reserved the right to permit for joint use such easement or right of way upon, through or in the lands hereby leased, occupied or used as may be necessary or appropriate to the working of the same or of other lands containing mineral deposits, and the treatment and shipment of products thereof by or under authority of the lessor, its lessees or permittees, and for other public purposes."

I cannot see where there is any ambiguity in such paragraph requiring construction by the Court. Where language in a written instrument is clear and unambiguous, the Court should give effect to the language employed according to its *literal* and *ordinary* meaning. It is my opinion that the reservation of rights by plaintiff in the subject lease, clearly and unambiguously reserved to the plaintiff a right of way for "public purposes" across defendant's leasehold. It cannot be argued that right of way for highway purposes is not a public purpose.

I ask the majority—in what different manner could the State have protected itself in those leases without spelling out each and every possible "public purpose" that could be contemplated by legal scholars?

The majority states:

"To read the phrase 'and for other public purposes' literally, as the state would have us read it here, would mean that the state could grant a leasehold one day and appropriate the entire leasehold the next day without any liability to the lessee as long as the appropriation were for a public purpose."

I ask, why shouldn't the lease be read literally? Defendant acquired the leasehold from the State for a minimal 25¢ per acre per year, plus 10¢ per yard royalty. Should defendant choose not to extract gravel, no royalties are payable. It seems incredible to me that the defendant should receive all but a fee interest in the leasehold for the term of the lease for a mere 25¢ per acre rental. Such a minimal rental must of necessity presuppose the possible reacquisition of a portion of the leasehold by plaintiff for "public purposes."

In the present case, defendant paid plaintiff 25¢ per acre per year for the 10.61 acres taken for right of way and in return was awarded by the trial court $19,750.00 for such taking. The majority by non literal construction of the lease reservations, considers this equitable.

It is my conclusion that Paragraph 16 of the lease between plaintiff and defendant reserved to plaintiff the right to reacquire from the leasehold, rights of way for highway purposes.

The judgment of the trial court should be modified by ordering a remittitur in the amount of $19,750.00 and as so modified, affirmed.