Alexander Del Giorno, J.
This claim is before me for retrial by order of the Appellate Division (20 A D 2d 832) to determine whether certain factual matters not brought out in the trial exist or not, in order adequately to evaluate the damages herein.
This claim, which was tried before the late Judge Major and not decided by him before his death, was by consent of the parties decided by the present Judge on the record submitted at the trial and a viewing by this court of the lands in question.
This court found, in the original decision, that the claimant acquired the Wade and Miller tracts on two separate occasions and from different sellers, said parcels on the date of appropriation forming one parcel of land under a single ownership.
The court found, also, that the before value was $240,000; the after value was $200,000; and that direct and consequential damage was $40,000 with interest from May 1,1958 to November 1,1958 and from April 21,1959 to the date of entry of judgment.
At the trial the proof indicated the owwnership of both tracts to be in Guptill Holding Corporation. The State, however, knew before the trial that title to the Miller tract was in Charles M. Guptill, and had advised him through his attorneys to assign his claim to the claimant corporation, so that the Guptill Holding Corporation would appear as sole owner, which was done. On appeal, for the first time, the State raised the issue of separate ownership of the two parcels as affecting the question of severance damage, and requested an answer from the Appellate Division as to whether “ two contiguous, jointly-used- tracts which are separately owned, one by an individual, and the other by a corporation owned and controlled by that individual, may be treated as one tract? ”
The Appellate Division, because the record was devoid of any proof as to Mr. Guptill’s interest in or other relationship to the corporation other than the testimony that he was its president, found itself unable to pass upon the question submitted by the State, and ordered a new trial to develop Mr. Guptill’s relationship to the corporation.
Following the second trial and upon due deliberation this court adopts by reference the original findings of fact and conclusions of law of the claimant, the State and its own as if herein repeated in full, except for such differences as appear herein.
At the second trial it was stipulated that the record of the first trial be made the record of this trial, including all the exhibits, -and that the new testimony be used as supplementary thereto.
*633 Charles M. Guptill testified at the second trial. The following facts were brought out and stand uncontradicted:
That he owned three corporations, namely, Mastodon, Inc., Guptill Sand and Gravel, Inc., and Guptill Holding Corp., all incorporated, upon advice of his counsel and his accountant, in the year 1956. Mastodon, Inc., took over his skating, rink business; Guptill Sand and Gravel, Inc., took over his sand and gravel pit and his construction business; and Guptill Holding Corp. took over the Wade tract and other lands.
That these corporations were a family affair; he managed the corporations and his wife kept the books.
That he owned all the stock in the corporations except one share issued to his wife and one issued to his father.
That he had bought the Wade tract in his own name in 1947, and transferred title to the claimant corporation in 1956.
That he received a deed to the Miller tract on January 20, 1958, pursuant to negotiations for the purchase which were started in the Summer of 1957.
That Guptill wanted to purchase the Miller tract in the name of the corporation, but Miller would not sell to the corporate claimant, demanding Gup till’s name on the mortgage.
That Guptill mortgaged lands of the Guptill Holding Corporation to procure $28,000 he needed for the down payment to Miller. Guptill Holding Corporation indorsed those checks to Miller. The corporation also paid to Miller 44 monthly checks on the mortgage. Mastodon, Inc., also paid two checks on the mortgage and fees to the lawyers, and Guptill Sand and Gravel, Inc., and Guptill Holding Corp., paid mortgage tax, fees for surveyor, etc.
That Guptill intimated in substance that he dipped into whatever till he had money in or could reach first. He was the master of all he surveyed and used the corporations merely as legal devices to run his many interests efficiently and with a miuimnm of confusion.
The preceding appraisal of Mr. Guptill’s management, purpose and interest explains quite plainly why he had proceeded to lay out both the Wade and Miller farms as one unit for a residential development, and cut roads, drainage ditches, cut down a hill for grading and terracing on the Miller farm, removed growth, etc. The intent was to use both parcels for a single development.
The State offered testimony that in July, 1957 Guptill was visited by a representative of the Department of Public Works who showed him unofficial maps of the proposed taking. Another State witness asserted that a copy of the unofficial map was *634 actually delivered to claimant’s wife on October 18, 1957; the vesting took place on May 1,1958 and the official map and notice of appropriation were served on Gup till on May 4, 1959.
It is this court’s conclusion that the facts brought out at the second trial all amounted to unity of ownership in addition to contiguity and common use, and thus warrant a finding of severance damage resulting to both the Wade and Miller sections of the land.
The court, with reference to the before and after value of the land and the damages, direct and consequential, accruing to the claimant because of the appropriation, adheres to the original decision. The new testimony has confirmed, rather than changed, this particular aspect of the original decision.
Nichols, Eminent Domain (vol. 4 [3d ed.], pp. 715-733) lays down the test for determining not so much what constitutes, as here, a unitary use of two adjacent plots which are usually conceded to be one when a single ownership using both plots for the same purpose is involved but, rather, when such, plots are not to be considered as a unitary unit even though in a single ownership. It seems to conclude that in the many jurisdictions which have passed on this perplexing subject, such tests are not conclusive in themselves. Intent regarding the use seems to be the catalyst which would activate a decision one way or another.
At page 721, Nichols approaches the positive or unitary use of two or more parcels, summarizing the decisional law thus: ‘1 When two parcels are physically distinct there must be such a connection or relation of adaptation, convenience and actual and permanent use as to make the enjoyment of one reasonably necessary to the enjoyment of the other in the most advantageous manner in the business for which it is used, to constitute a single parcel within the meaning of the rule. ’ ’
At page 723, Nichols states in the footnotes what seems to be the judicial interpretation in our own State, as follows:
1 ‘ Integrated use becomes the test whether two or more tracts are to be considered as a unit. In other words, separation of the tracts is an evidentiary fact bearing upon, but not necessarily determinative of, the ultimate issue.
“ Textbook authorities and the decisions dealing with the question indicate that as a general proposition, ordinarily actual contiguity or physical connection of tracts is essential in order to create a ‘ unit ’ as a basis for awarding damages where a part or all of only one of the tracts is taken — but it is not necessarily a conclusive test. ’ ’
*635 (See, also, Stevens v. New York El. R. R. Co., 130 N. Y. 95, affg. 25 Jones & Sp. 416; Bischoff v. New York El. R. R. Co., 138 N. Y. 257; Coatsworth v. Lehigh Val. R. R. Co., 73 Misc. 645.)
The same text at page 725 refers to the English law on the subject.
England seems to be further advanced than we in recognizing the right of an owner of several parcels of land which, though not contiguous, are so situated that possession of each gives an enhanced value to all of them, holding that they are lands held together within the meaning of the Lands Clauses Act which provides that compensation shall be made for lands taken and “ for injury done or to be done to the lands held therewith”. (Essex v. Local Bd. of Dist. of Action, L. R. 14 H. L. 153, 156.) Likewise, it is held in most of our States that compensation for severance damage be given the owner of various parcels where the use, intent and purpose is unitary and the taking from one causes injury to the remainder parcel or parcels.
We hold, therefore, that these two farms constituted a single plot, were being developed as a single plot by the Guptill Holding Corporation, which actually meant one owner, Charles M. Guptill, who acted vicariously either as an individual or by one or the other corporations but, when analyzed, each spelled out Charles M. Guptill.
The State obviously introduced the testimony of its two representatives to point out that Mr. Guptill knew or should have known that the Northway would cut through his property, and that, therefore, he bought the Miller farm in bad faith.
The testimony has clearly indicated that he was dickering for the Miller farm in the Summer of 1957, at or about the time he was visited by the State representatives with unofficial maps. Such a visit did not constitute an interdict against his purchase. He had a right to purchase, for let it be noted that the first vesting did not take place until May 1,1958 as to the Miller farm and on August 28, 1958 as to the Wade farm.
The award originally made herein, to which the court adheres, considered the value of the portion directly taken and the consequential damages to both parcels, if found to be in a unitary use. This court has now so found.