Ronald E. Coleman, J.
The claim was duly filed on September 20,1967 and has not been assigned or submitted to any other court or tribunal for audit or determination. Pursuant to section 30 of the Highway Law, and acts amendatory thereto, the State of New York appropriated a portion of claimant’s property located in the Town of West Seneca, County of Erie, State of New York, by taking the fee to the property as described on Map No. 82 as Parcel No. 75 and Map No. 83 as Parcel No. 76, Aurora Expressway— Contract I, New York State Thruway to South Blossom Road. The appropriation maps were filed in the Erie County Clerk’s office on March 16 and 20, 1967 and were served on the claimant. The court adopts the descriptions as shown on the maps so filed.
In 1948 the claimant purchased some 15,328± square feet of land with frontage on 'Center Road of 125.12± feet and 120± feet on Union Road. On the property at the time of the appropriation was a two-bay gasoline station with three pump islands constructed in 1954 or 1956 which had 'been well maintained. The station was run by an operator under an agreement with the claimant, and prior to the taking the average number of gallons sold was better than that for most major oil company stations in the Buffalo area. The station sold 675,000 gallons in 1964, 677,000 gallons in 1965 and 664,000 gallons in 1966. The other three corners at this intersection were also occupied by major oil company gas" stations. The intersection at Union and Center Roads was well located for a service station, as both roads were heavily traveled arteries and had an extensive residential backup to the east, south and west.
Sometime in 1966, claimant became aware of the fact that the State intended to widen both Union and Center Roads at this intersection. An employee of claimant’s real estate department for the Buffalo area inquired of the State what was to be done in connection with the widening, was informed what the plans were at that time, and as a result concluded that the reduction *660 occasioned by the widening in the area of this gasoline station, together with the proposed installation of curbs and curb openings, would make it impossible to continue operating a gasoline station on this property when and if the proposed construction was completed. There is no question but that this location as it had been operated for over 12 years had as its highest and best available use that of a gasoline station.
Claimant also concluded that it would be necessary for it to purchase additional land in order to continue to maintain a gasoline station at this location. While it was suggested on the trial that the claimant acquired the additional land for other reasons, on the proof in this record we find that the additional land was acquired solely by reason of the impending appropriation. Had the State not made the appropriation, claimant would have continued to operate its station and had no plans to enlarge it or to build a new station at that time. On July 15, 1966 claimant acquired an additional 50± foot frontage on Center Road adjoining its property, referred to on the trial as Parcel C, and an additional 61 ± foot frontage on Union Road, referred to as Parcel B. The total cost to the claimant of acquiring this additional property together with legal fees, demolition costs, excavation, fill and grading was $34,000. In our opinion the fact that the claimant did purchase additional property in 1966 prior to the appropriation created a problem not only as shown by the appraisals submitted, but also by the testimony on the trial of the claim.
Prom the gasoline station site, Parcel A, the State appropriated 2,700± square feet adjacent to Union and Center Roads. Claimant’s appraiser placed a before and after value on the original gasoline station and then added an amount for the damages found for the 470± square feet appropriated from Parcel B on Union Road. He found a before value for Parcel A of $110,000, an after value of $40,000 and damages of $70,000. In doing so he found that the highest and best available use of Parcel A after the appropriation was for a commercial use. He then also determined what the damages were based on what he termed “ cost to cure ”. The original gasoline station building was removed, and, on the land remaining after the appropriation on Parcel A, together with the additional land purchased, claimant constructed a new modern three-bay station and pump islands. In his cost to cure the claimant’s appraiser took the replacement cost of a two-bay station which he depreciated 40% based on the number of years the station had been there, arriving at a depreciation replacement figure to which he added the total cost of the additional land and demolition and tank removal costs to arrive at a rounded figure of $65,000 which he *661 testified represented the cost to cure. The method used by him did not represent what we believe to be the proper method of proving the cost to cure and further, it resulted in damages which in our opinion exceeded the values of what the State took. “ While evidence of the cost to cure a condition resulting from an appropriation is admissible such cost cannot be allowed in an amount greater than the amount of consequential damages otherwise supported.by the record.” (Goldsmith v. State of New York, 32 A D 2d 607.) The claimant’s appraiser based his damages to this property of $65,000 on his cost to cure and we cannot accept this as a proper measure of damages in this claim (see Mayes Co. v. State of New York, 18 N Y 2d 549; St. Patrick’s Church v. State of New York, 30 A D 2d 473; Abe Cooper-Syracuse v. State of New York, 8 A D 2d 578).
The appraiser for the State appraised the property on the basis of the original property together with the additional land purchased in 1966. He also found that the gasoline station building would have to be removed. He placed a value on the land as well as certain land improvements and on the building, all of which he added together to arrive at the before value found by him. He then considered all the property as if it were being put to one use at the time of the appropriation to arrive at his after value and the damages.
In our opinion neither the method used by the claimant’s appraiser nor the State’s appraiser and the damages found by them would result in just compensation on the facts of this claim. The problem here is a result of the fact that the claimant took the trouble in 1966 to find out what the State was planning to do at that time, rightly determine what the effect would be on its property if the State finally did what was proposed, and then had the foresight to purchase additional land so that it would be able to continue to operate a gasoline station at this location. In our opinion the purchase of the Parcels B and O by the claimant was made under the threat of an imminent appropriation. (Cf. City of Buffalo v. Irish Paper Co., 31 A D 2d 470.) Both appraisers agreed that the highest and best available use of Parcel A prior to the appropriation was for a gasoline station. Indeed, the gallonage produced by the station made it an exceptionally good location. Both also agreed that following the appropriation a gasoline station could no longer be operated on what was left of Parcel A and the highest and best available use of this parcel had been reduced to a commercial use.
Just compensation does not permit the 'State to take advantage of what was good business judgment on the part of the claimant in the purchase of additional land in 1966 nor for the claimant *662 to be unjustly enriched as a result of the appropriation. "What has to be considered here is whether or not there was a unity of use at the time of the appropriation in respect to Parcel A together with Parcels B and C. This fact seems to have been recognized by the appraiser for the State when he found that the highest and best available use of all of the property at the time of the appropriation was “as a gasoline service station with excess land adaptable for the same use.” He evidently considered that the two parcels purchased in 1966 were excess land at the time of the appropriation but he did not appraise them as such in determining the damages sustained by claimant’s property. In fact, the additional land would have had to have been rezoned in order to use it for a gasoline station. The claimant did not seek nor would it have been entitled to any consequential damages as a result of the appropriation made to Parcel B. Had it done so, claiming frustration of future plans for expansion, on this record we could not have found consequential damages for the reason that no showing was made that there was any unity of use of all these parcels at the time of the appropriation. (See Matter of Board of Supervisors of Monroe County v. Sherlo Realty, 32 Misc 2d 579, affd. 19 A D 2d 590, affd. 13 N Y 2d 1172; Guptill Holding Corp. v. State of New York, 43 Misc 2d 631, 634-635, affd. 23 A D 2d 434; Ephraim, Holding Corp. v. State of New York, 30 A D 2d 623; 4 Nichols, Eminent Domain [3d ed.], pp. 715-733.) Under these circumstances we fail to see how it can be said here that all the parcels should be appraised together as one property as was done by the State’s appraiser. On the proof in this record it is our opinion that Parcel A on which the gasoline station was located constituted a separate and individual parcel having no unity or conjunctivity of use with Parcels B and C at the time of the appropriation. When the appropriation was made there was a house on both Parcels B and C. Accordingly, the damages herein should be determined by placing on Parcel A a before value as a gasoline station and an after value for a commercial use.
We have been able to determine our before and after values by making use of the comparable sales contained in both the claimant’s and the State’s appraisals and have been aided in doing so by our view of the property. In arriving at our before value for the land we have considered that the two sales cited by the 'State, sales Nos. 5 and 6, are most comparable, being located on Union Road northerly of the claimant’s property. These two sales were assembled to be used together as a location on which there was to be constructed a gasoline station. The two sales together with the demolition costs resulted in a price *663 paid of $3.63 a square foot of land. While the plot of land assembled resulted in a frontage of 60^ feet more on Union Road and 5± feet less on Clinton Street than claimant’s Parcel A, the price paid was for a property to be developed as a gasoline station location. As claimant’s property had been developed as such a location operated as a gasoline station for a number of years prior to the appropriation and had been producing a high gallonage sale, in our opinion it had a value of $4 a square foot. Our before value was arrived at by taking the 15,328± square feet in Parcel A at $4 a square foot which would give a land value of $61,312 and adding to that $21,500 found by the State’s appraiser to be the value of the improvements on this property for a total of $82,812 as the before value. In respect to the value after the appropriation, the claimant’s appraiser placed on Parcel A $40,000 as its value for a commercial use utilizing what was remaining of the land as well as the building. He based this on certain sales contained in his appraisal. In this connection we asked the State’s appraiser concerning the value of the land after the appropriation for a commercial use and he testified between $1.50 and $1.75 a square foot. The 12,628± square feet left remaining on the corner at $1.50 a square foot would have a value of $18,942, and, taking the value of the improvements to be $21,500, less the $950 found by the State’s appraiser to be the value of the land improvements appropriated, would give us a value of $20,550 for the remaining improvements. Adding the value of the land and the remaining improvements together would produce an after value for the property of $39,492. Considering all these facts we have found the value of claimant’s property after the appropriation to be $40,000. The difference between our before and after value is $42,812 to which we add $1,000 which represents the value of 470± square feet at $2.10 appropriated from Parcel B on Union Road. We find that claimant’s property has been damaged in the amount of $43,812 as a result of the appropriation.
We find that the direct damages to Parcel A were $11,750 consisting of $10,800 for land and $950 land improvements appropriated, and that the consequential damages to the remaining land, land improvements and building on Parcel A were $31,062. All the values found by us herein are based on various component parts of the claimant’s and State’s appraisals and the testimony of the witnesses herein. The after value of Parcel A found by us was the value of claimant’s remaining property for a commercial use based on comparable sales. The claimant after the appropriation had the right to tear the building down. *664 The claimant elected to do so and use the land remaining on Parcel A together with other land as a location on which to construct a new, modern three-bay gasoline station. Having done so, in our opinion the claimant is entitled to be compensated only for what it has lost. We have not compensated the claimant for the demolition costs of the building located on Parcel A, for the reason that claimant’s damages are the difference between the before and after value of Parcel A and it is not entitled to charge to the 'State demolition costs for tearing* down the building in order to utilize the site as one on which to build a modern gasoline station.
Claimant is entitled to an award herein in the amount of $43,812 with interest thereon from March 20, 1967 to the date of entry of judgment herein.