Argued October 8, 1969, affirmed January 21, 1970

# CITY OF MEDFORD, *Appellant, v.*
# BESSONETTE ET AL, *Respondents.*

463 P. 2d 865

*Ervin B. Hogan,* Medford, argued the cause for appellant. With him on the briefs were E. R. Bashaw, City Attorney, and William Mansfield, Medford.

*Stanley C. Jones,* Medford, argued the cause for respondents. With him on the brief was G. W. Kellington, Medford.

Before PERRY, Chief Justice, and SLOAN, O'CONNELL, GOODWIN,* DENECKE and HOLMAN, Justices.

O'CONNELL, J.

This is an action instituted by the city of Medford to acquire by condemnation a part of two lots the record title to which was in the defendants M. O. and Joy D. Bessonette and Ben J. and Melba M. Trowbridge. Medford Plaza Apartments, Inc. intervened, claiming the beneficial ownership in the lots. The jury returned a verdict in favor of intervenor, assessing damages in the amount of $70,000. Plaintiff appeals.

The property condemned consisted of the easterly 74 feet of Lots 1 and 2 of Block 75 in the city of Medford. Medford Plaza Apartments, Inc. formerly owned Lots 1 and 2 and also owned Lots 10, 11 and 12 which were across the alley from Lots 1 and 2. Plaza had conveyed Lots 1 and 2 to the Bessonettes and Ben J. Trowbridge, its stockholders, vesting an undivided interest in each in the same proportion as his stock ownership in Plaza, which was approximately

---

* Goodwin, J., resigned December 19, 1969.

one-third. The conveyance was made necessary to meet the demands of the FHA which had partially financed the Plaza project. Plaza had financed the purchase of the lots through loans made by its shareholders. The loans were evidenced by negotiable notes to the shareholders. FHA found the method of financing improper and to obviate the objection the lots, together with non-negotiable and non-assignable notes, were conveyed to the stockholders in exchange for the negotiable notes. The transfer was effected by a warranty deed executed on May 25, 1961.

On August 9, 1965 plaintiff filed its complaint. On October 1, 1965 it was stipulated between plaintiff and defendants that the city could take possession of the property. After plaintiff took possession Plaza filed a petition to intervene, alleging that it was the beneficial owner of Lots 1 and 2 under an oral trust created by the stockholders at the time the lots were conveyed to them. Plaza asserted that since it held title to Lots 10, 11 and 12 and was the equitable owner of Lots 1 and 2 as the beneficiary of an oral trust, the plaintiff's taking of a part of Lots 1 and 2 resulted in severance damages. The case was submitted to the jury on this theory and a verdict in the amount of $70,000 was returned in favor of Plaza.

In its reply to Plaza's pleading in intervention, plaintiff set up an estoppel as a defense alleging, in effect, that plaintiff was induced to believe that defendants were the beneficial owners of Lots 1 and 2 and therefore that plaintiff could acquire the property at its fair market value without any claim for severance damages. This part of the reply was stricken by the trial court on the ground that it constituted a pleading of evidence on the issues involved in the claim for severance damages, and that this evi-

dence would be admissible without being specially pleaded. In plaintiff's first assignment of error it is contended that the court erred in striking this part of the reply.

■ We fail to see how plaintiff was prejudiced by the court's ruling. Plaintiff was not precluded from presenting its theory of estoppel as a defense to Plaza's claim of unity of ownership. The trial court made this clear in striking the allegations of estoppel from plaintiff's reply. Plaintiff presented evidence to support its theory of estoppel. And plaintiff would have been entitled to an instruction presenting the estoppel issue to the jury but no request was made for such an instruction. The evidence in support of an estoppel was not sufficient to warrant a holding that Plaza was estopped as a matter of law. Since plaintiff had the opportunity to present its case as fully as it would have had under the pleading that was stricken, the court's ruling did not constitute reversible error.

■ Plaintiff further contends that the pleadings raised an equitable issue which, under ORS 16.460 (2), should have been tried first and the proceedings at law stayed until the equitable matter had been disposed of. The trial court ruled that no equitable issues were presented by the pleadings. We agree. It is true that Plaza's claim to severance damages rested upon unity of title which required it to prove that it was the beneficiary of a trust created by the stockholders. But proof of the trust was in no way related to any equitable issue in the case. No one was seeking equitable relief. The existence of the trust was merely a question of fact which had to be resolved in determining whether Plaza satisfied the requirement of unity of ownership and therefore qualified for an award

of damages in a condemnation action—an action at law.

■■ Plaintiff argues that Plaza failed to produce sufficient evidence to establish the creation of a trust. Evidence was adduced to prove that at the time the deed to Lots 1 and 2 was executed to the stockholders there was an oral agreement that the stockholders would hold the title in trust for Plaza. Plaintiff contends that this evidence was inadmissible under the Statute of Frauds and under the parol evidence rule. This contention is without merit. Non-compliance with the Statute of Frauds can be asserted by "a party to a contract or the successor of a party or one to whom the rights of a party are transferred or contracted to be transferred."[1]

Plaintiff argues that it is in the position of a "successor of a party," relying upon *Highway Comm. v. Superbilt Mfg. Co.,* 204 Or 393, 421, 281 P2d 707 (1955) where it is said that "[i]n condemnation proceedings the relationship of condemnor and condemnee is deemed to be the same as that of buyer and seller of the realty." It is true that the condemnor may for certain purposes be considered as the successor of the condemnee. But the condemnor is not a "successor of a party" within the meaning of that term as used in describing the scope of the Statute of Frauds. A successor to a party may assert non-compliance with the Statute of Frauds only in those circumstances where the party's interest would be adversely affected if the right to assert non-compliance

---

[1] Restatement of Contracts § 218, p. 294 (1932). Ringler v. Ruby, 117 Or 455, 460, 244 P 509, 46 ALR 245 (1926): "The statute of frauds was enacted for the protection of the party sought to be charged. It is personal and not available to strangers to the agreement."

were not given to his successor. Thus it has been pointed out that if a seller is to be given the protection of the Statute of Frauds he must not only have the power to repudiate the transaction himself but the power must also vest in his purchaser, otherwise the seller would not be able to sell the property.[9]

That reasoning would not be applicable in circumstances such as the present where the condemnee, even if regarded as a "seller," has no interest to be served by giving to his successor the power to assert noncompliance with the statute. Upon the same reasoning, plaintiff's reliance upon the parol evidence rule is not supportable.

■ In addition to the testimony that the stockholders orally agreed to hold the property in trust for Plaza there was some evidence that the property was used for Plaza's purposes pursuant to the trust agreement. We are of the opinion that there was sufficient evidence from which the jury could reasonably find that a trust for the benefit of Plaza was created.

■ It was also necessary for Plaza to establish that the lots taken were used in connection with the apartment building to satisfy the requirement of unity of use for the recovery of severance damages. The jury was so instructed and we think that there was sufficient evidence to support the verdict on this issue. There was evidence from which it could be reasonably concluded that Plaza retained a beneficial interest in the lots for the purpose of providing space for parking and recreational uses.

■ Plaintiff next contends that the trial court erred in refusing to strike certain testimony of Mr. Blinkhorn, an expert value witness. It is argued that the wit-

[9] 3 Williston on Contracts § 529, p. 740 (3d ed 1960).

ness employed an improper factor in arriving at his estimate of the loss to Plaza resulting from the taking of Lots 1 and 2. The witness based his estimate upon a capitalization of the rental income from the Plaza Apartments. He concluded that the loss of the use of Lots 1 and 2 for parking and recreational purposes would result in a reduction of rentals. This conclusion was based upon assumption that it would be necessary to provide parking and recreational space for the Plaza tenants in the future in order to maintain the occupancy rate existing at the time of the taking.

Plaintiff contends that this computation was improper because an estimate of income from future uses of the property would be speculative. Plaintiff relies upon *State of Oregon v. Cerruti,* 188 Or 103, 214 P2d 346, 16 ALR2d 1105 (1950) which held that it was error to estimate the value of agricultural land upon the basis of the income which would result if the land were planted to celery and lettuce. We do not regard the *Cerruti* case as controlling. In *Cerruti* the court recognized the distinction between the capitalization of rentals and the capitalization of profits and excluded the estimate of value in that case because it was based upon a capitalization of profits.

In the present case the estimate is based upon the capitalization of rentals. The witness regarded the rental income as flowing in part from the use of Lots 1 and 2 for parking and recreational purposes. It was his opinion that a loss of these lots and the consequent unavailability of the lots for present and future parking and recreation purposes would render the apartments less desirable to prospective tenants and thus would reduce the amount of rent which could be obtained after the taking.

The prediction of loss of rental was based in part

upon the unavailability of the condemned land for a swimming pool and other improvements not in existence at the time of the taking. If the use of the property taken was treated as if it had no connection with the use of the adjoining land for apartment purposes, the calculation of rentals from the prospective use for recreation purposes would clearly violate the principle that speculative income cannot be used as a basis for capitalization. But the estimate made by the value witness was not based upon such a separate use of the property taken unrelated to the other land from which it was severed; the witness made his calculation upon the assumption that the existing and proposed uses of the lots taken were essential to the full utility of the remaining land. Once it was established that the use of Lots 1 and 2 formed an integral part of the use of the apartment building, it was proper to show how the loss of the use of Lots 1 and 2 would affect the rental income from the part of the land not taken.

To prove that provision for recreation and parking areas was an important factor in the operation of a high rise apartment, Plaza called as witnesses owners of high rise apartment buildings in Eugene, Oregon. The evidence adduced through these witnesses supported Plaza's contention that parking and recreational areas adjacent to the apartment building were necessary to the full utility of the building. This evidence thus tended to support Mr. Blinkhorn's premise that the vacancy rate would rise with the loss of parking and recreational space adjacent to the Plaza Apartments. Objection was made to this testimony on the ground that it was irrelevant and its admission in evidence is assigned as error on appeal. The objection was not well taken.

■ The testimony was relevant to show that in com-

parable high rise apartment operations the availability to the apartment tenant of parking and recreational space is regarded as an important factor in attracting tenants and in fixing apartment rentals.

Plaintiff contends that the trial court erred in awarding attorneys' fees in favor of Plaza. The contention is based upon the ground that ORS 35.110 allows attorneys' fees to "defendants" but not to intervenors.[9] By its intervention Plaza stood in the position of a defendant. Where a party intervenes the plaintiff does not, strictly speaking, have the opportunity to make a tender to the intervenor "before commencing the action." However, as soon as a party seeks to intervene and his interest is made known to the plaintiff, a tender at that point can be made and may be considered, as to the intervening defendant, a tender before the commencement of the action.

■ It is argued that the statute should not be so construed because it "would permit prospective defendants in a condemnation action to guarantee the payment of attorneys' fees to them by leading the condemnor to believe that they had no interest and by that device forestall the making of any offer to them and then, after the action is commenced, intervene and require the payment of attorneys' fees no matter what the award by pointing out that no offer was made before the institution of proceedings." If the circumstances were such as outlined by plaintiff, con-

[9] ORS 35.110 provides:

"The costs and disbursements of the defendant, including a reasonable attorney's fee to be fixed by the court at the trial, shall be taxed by the clerk and recovered from the plaintiff, unless the plaintiff tendered the defendant before commencing the action an amount equal to or greater than that assessed by the jury, in which case the plaintiff shall recover his costs and disbursements from the defendant, but not including an attorney's fee."

demnor might well have a basis for asserting an estoppel against the intervening defendant. But in the absence of an estoppel the intervenor should be treated in the same manner as if he were an initial defendant in the case.

■ Plaintiff asserts that there were facts sufficient to give rise to an estoppel in the present case. We have previously alluded to plaintiff's argument on this point noting that plaintiff failed to request an instruction on the estoppel issue. If the issue had been presented to the jury, there was evidence from which the jury could have found that plaintiff's officers were aware of Plaza's interest in ample time to make an offer to Plaza commensurate with its interest in Lots 1 and 2. When the trial judge was called upon to fix the attorneys' fees plaintiff filed an objection to the cost bill, asserting the same grounds for an estoppel which are now recited in plaintiff's brief. We may assume that the trial judge appraised the evidence of an estoppel in passing upon plaintiff's objection and found in favor of defendants and the intervenor.

We have examined the other assignments of error and find them without merit.

The judgment of the trial court is affirmed.