ERLY REALTY DEVELOPMENT, INC., Respondent-Appellant, *v.* STATE OF NEW YORK, Appellant-Respondent. (Claim No. 47086.)

WILLIAM E. RYAN et al., Respondents-Appellants, *v.* STATE OF NEW YORK, Appellant-Respondent. (Claim No. 47087.)

Third Department, January 24, 1974.

*Louis J. Lefkowitz, Attorney-General* (*Vernon Stuart* and *Ruth Kessler Toch* of counsel), for appellant-respondent.

*Nathan M. Medwin* (*Francis Bergan* of counsel), for respondents-appellants.

COOKE, J. These are cross appeals from two judgments in favor of claimants, entered May 15, 1972 and June 16, 1972 respectively, upon a decision of the Court of Claims.

These claims arose out of the appropriation in 1964 of a 27-acre strip dividing tracts aggregating about 66 acres located on the northerly side of Washington Avenue in the City of Albany. The individual claimants (Claim No. 47087) owned about 47 acres and were the shareholders of the corporate claimant (Claim No. 47086) which held title to the remainder of about 19 acres. The individual claimants were awarded judgment for $998,625.50 and the corporate claimant $535,947.50, both plus appropriate interest.

The bed of Patroon Creek, a small stream running generally parallel and to the north of Washington Avenue, and an easement over a 33-foot strip on each side of the creek were conveyed by Stephen Van Rensselaer to the City of Albany in 1850, the deed containing the following reservation: " But the rights and privileges above granted are not to be used in such a manner as unnecessarily to injure the lands for agriculture purposes, or to prevent the proper and necessary use of said water for ordinary farming purposes by the owners of the adjoining land or to prevent the erection of convenient bridges or passage across said creeks." Title to claimants' land devolved in part from Van Rensselaer who conveyed a portion to Theophilus Roessle (Roeple) in 1864, excepting and reserving therefrom the 33-foot strips on each side of the creek (the fee of which strips was conveyed to the City of Albany in 1888). Also in 1864, Roessle purchased from Bingham other lands, which abutted Washington Avenue, and the combined tract less the excepted creek and strips was ultimately conveyed to claimants' predecessors in title.

In January, 1956, William Ryan, Mary Stephens, Genevieve and Julian Erway conveyed an undivided one-half interest in the tract in question to Donald Lynch and, in the same month, Erly Realty Development, Inc., the corporate claimant, was incorporated with three of said persons named as the original

directors and subscribers of the certificate of incorporation. In March, 1956, the corporation received a tax title from the County of Albany to the combined parcel, and in May of that year the individuals conveyed to the corporation a 7.8-acre parcel fronting on Washington Avenue. By a deed dated in July, 1956 and recorded in November, 1957, the individuals conveyed to the corporation a parcel of almost two acres near the eastern end of the tract, same fronting on Washington Avenue and with access to Tudor Road, an unfinished roadway running north off Washington Avenue. The remainder of the corporation's land, a parcel of approximately 9.4 acres to the west of the former Van Rensselaer-Roessle tract but not abutting Washingon Avenue, was acquired from the Niagara Mohawk Power Corporation in 1957.

In May, 1956, the corporation leased the 7.8-acre parcel (upon which a motel was later constructed) to the Albany Royal Theatre Corporation for a term of 99 years and about three months later the individual owners convenanted not to permit the erection or operation of a motel or similar structure upon any portion of their lands on Washington Avenue for 25 years. In 1959 the individuals leased to the Hellman Motel Corp. a 200- by 400-foot parcel, directly east of the 7.8-acre parcel, and upon which a theatre subsequently was built. These two parcels were unaffected by the taking.

Thus, generally speaking, before appropriation, the individual claimants and the corporation owned an irregularly shaped piece of land with approximately 1,000 feet of Washington Avenue frontage (excluding the portions leased for motel and theatre use) and with a maximum depth of over 1,200 feet. Of the aggregate, containing approximately 66 acres, about 23 were north of Patroon Creek and the 33-foot strip northerly of it and the entire tract, except for the leased parcels, was undeveloped. The appropriation divided the remainder into 11 acres to the north (of which less than one acre was owned by the corporation) and approximately 20 acres to the south (about 2 acres of which were owned by the corporation), not including the leased parcels, with about 500 feet frontage on Washington Avenue.

The State contends that the interests of the corporation and the individual claimants were subject to a separate rather than a unified appraisal. In order to treat different parcels, owned variously by individuals and a corporation controlled by those individuals, as one tract for the purpose of assessing severance damages incident to an appropriation, there must be (1) con-

tiguity, (2) unity of use and (3) unity of title or ownership (*Guptill Holding Corp. v. State of New York*, 20 A D 2d 832, 833; cf. *O. & W. Lines v. State of New York*, 30 A D 2d 998).

Although the State argues that certain of the parcels were non-contiguous, those owned by the individuals and those of the corporation were adjacent and lacked any physical boundary. Patroon Creek, which cut across lands owned by the individual claimants and a corner of the corporation's premises, was capable of being traversed by bridges and the trial court properly found that claimants had the right to erect such structures. " A public highway actually traveled, a railroad, a canal, or a creek running through a large tract devoted to one purpose does not necessarily divide it into independent parcels, provided the owner has the legal right to cross the intervening strip of land or water." (4A Nichols, Eminent Domain [3d ed.], § 14.31 [1]; cf. *Matter of Town Bd. of Town of Islip* [*Fishman*], 12 N Y 2d 321, 328; *Strong v. State of New York*, 38 A D 2d 241, 243–244.)

There was testimony that claimants intended to develop the entire tract for commercial purposes and that it had been assessed on the tax rolls in one entry solely in the name of the corporation. The easternmost parcel of the corporation, except for highway frontage, was surrounded by lands of the individuals; the westernmost lands of the corporation were landlocked but for access to Washington Avenue across premises of the individuals; and the areas owned by claimants north of Patroon Creek were similarly without independent access. The individuals restricted the use of their lands to the purposes for which the corporate motel tract was to be put. With these facts before it, the trial court was justified in finding a unity of use (cf. *Stevens v. New York El. R. R. Co.*, 130 N. Y. 95; *Guptill Holding Corp. v. State of New York*, 43 Misc 2d 631, 634, affd. 23 A D 2d 434, mot. for lv. to app. den. 16 N Y 2d 484). This was not a situation where unrelated uses were going on side by side on contiguous parcels (see *Ephraim Holding Corp. v. State of New York*, 30 A D 2d 623).

Without actual unity of title, the exceptions to the general rule requiring unity of ownership for the allowance of severance damages are narrowly confined (*Kessler v. State of New York*, 21 A D 2d 568), but the award of such damages has been sustained where, given contiguity and unity of use, close control of one ownership entity by the other is tantamount to actual ownership (*Guptill Holding Corp. v. State of New York*, 43 Misc 2d 631, 635, affd. 23 A D 2d 434, 435, 437, mot. for

lv. to app. den. 16 N Y 2d 484, *supra*). There was proof that the respective stockholdings of the individual claimants in the corporation were in exactly the same proportion as the undivided interest of each in the real estate of the individuals. Together, the individual claimants owned all the shares of the corporation. In addition to this shared ownership, the record discloses close control by the individuals over the corporation in conjunction with the use of their parcels: a restrictive covenant for the benefit of the corporation's lessees covering the individually titled lands; transactions between the individuals and the corporation carried on at less than arm's length; the purchase of a tax title to the entire tract by the corporation; and the single assessment of the premises in the name of the corporation. Thus, the court had a right to rely on the holdings in *Guptill*, the only factual distinction being that in the instant case there are five individual claimants instead of one holding title to the realty in their individual names and exercising joint control over the corporate owner, a distinction which should not compel a different result. (See *Matter of Guptill Holding Corp. v. State of New York*, 33 A D 2d 362, affd. 31 N Y 2d 897.)

It is contended by the State that claimants never had any right of access to Washington Avenue across Patroon Creek and the City of Albany's 33-foot strip on either side. If this is so, the land to the north of the creek was worth much less than claimants' appraisers urged and it would follow that the land was noncontiguous for unitary valuation purposes. The easement upon which claimants' right of access depends dates back to the reservation in Van Rensselaer's deed of Patroon Creek to the city, which states that the rights and privileges granted the city could not be used " to prevent the erection of convenient bridges or passage across said creeks." Contrary to the State's argument, this reservation is unambiguous and the mention of " agricultural " and " farming " purposes in the clauses preceding the bridge and passage rights is not a conditional antecedent to the grant of said rights.

What is reserved in a deed depends on the language employed and, in the final analysis, one must look to the intent at the time of reservation to determine what in fact was reserved, it being necessary at times to look at the intent of the parties to the transaction " as manifested by the condition of the property at time of transfer and the use of the property before and after transfer ". (2 Warren's Weed New York Real Property [4th ed.], Easements, § 4.03.) The grant of Patroon

Creek and of the adjoining land from Van Rensselaer to the
city was for the purpose of supplying the latter with "pure
and wholesome water" and the city was given the right to
enter upon the land for the purpose of "cutting drains or
trenches, raising embankments and constructing any other erec-
tions or works that may be necessary or useful to protect or
preserve the waters" of said creek. If the servient estate
here were a park or other municipal construction site, the State's
argument might carry some weight but, under the evident cir-
cumstances, it does not seem that the city fathers in 1850 would
have cared as to the kind, number or purpose of the bridges
erected over Patroon Creek—so long as the creek water was
preserved.

The contention that the proposed use of claimants' lands to
the north of Patroon Creek would unreasonably burden the
servient estate by expanding the easement is not sound. Not
only does the grant not limit the size or width of any bridges
which might be constructed, but the use of the plural indicates
that more than one such bridge might be erected. It is assumed
that the parties to a conveyance anticipated such uses as might
reasonably be required by a normal development of the domi-
nant tenement (*Armstrong* v. *County of Onondaga, Onondaga
County Water Dist.*, 31 A D 2d 735), and a change in the use
of the dominant tenement does not extinguish the easement or
place limitations on its use which were not contemplated in
the reservation (*Arnold* v. *Fee*, 148 N. Y. 214). In the absence
of any express or implied limitation upon the use or expansion
of the easement for crossings, a commercial development of
the dominant tenement is a normal use of land and commercial
traffic over the easement would not unreasonably burden the
servient tenement, so long as the city's right to "pure and
wholesome water", as it may have existed at the date of
appropriation, was undisturbed.

The State's argument, that the owner of the dominant tene-
ment may not subject the servient tenement to servitude or
use in connection with other premises to which the easement
is not appurtenant (see *McCullough* v. *Broad Exch. Co.*, 101
App. Div. 566, 572, affd. 184 N. Y. 592), overlooks the fact
that the premises served by the easement were for all prac-
tical purposes those north of Patroon Creek.

No issue has been raised as to the highest and best use of
the premises in question and the awards, supported by evi-
dence in the record, are within the range of testimony (cf.

*Metzner* v. *State of New York,* 43 A D 2d 774).

The judgments should be affirmed, without costs.

STALEY, JR., J. P., SWEENEY, KANE and MAIN, JJ., concur.

Judgments affirmed, without costs.