Argued and submitted January 21, affirmed October 2, reconsideration denied
November 22, 1985, petition for review allowed January 28, 1986
See later issue Oregon Reports

## CITY OF SALEM,
*Appellant,*

*v.*

## H.S.B. et al,
*Respondents,*

## M. P. MATERIALS CORPORATION,
*Intervenor - respondent.*

(132292; CA A31l07)

707 P2d 73

David J. DeMartino, Assistant City Attorney, Salem, argued the cause for appellant. With him on the briefs was William J. Juza, City Attorney, Salem.

John E. Frohnmayer, Portland, argued the cause for respondents. With him on the brief were Barbee B. Lyon and Tonkon, Torp, Galen, Marmaduke & Booth, Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Plaintiff appeals a judgment for defendants and intervenor in a condemnation action. On March 2, 1982, the city condemned 4.9 acres in the southeast corner of a 39-acre parcel (the west parcel) for the right-of-way of the Salem Parkway. H.S.B., a partnership, owned the west parcel. The city alleged that the value of the 4.9 acres, and the damages, if any, from the taking, were $90,950. More than 30 days before trial it offered defendants $115,000. *See* ORS 35.346(2). Defendants refused that offer.

Intervenor M. P. Materials Corporation (MPM) owns 90 acres (the east parcel), which lie about 400 feet southeast of the west parcel and are separated from it by railroad tracks of the Burlington Northern Railroad. The east parcel contains a large deposit of gravel under a 10-20 foot deep soil cover that is known as "overburden." Defendants' amended answer alleged that the east and west parcels are part of a unified gravel operation, that "the taking [of the 4.9 acres] eliminates access to the balance of the [west parcel], thus preventing defendants from reasonably being able to dispose of the overburden from the [east parcel]," and that severance damages to the east parcel from the taking of the 4.9 acres are $194,333.

After trial began and the jury was empaneled, MPM moved to intervene. The court allowed the intervention. MPM's answer alleged that the east parcel was damaged, "because it is irrevocably committed to a unified use" with the west parcel; that the "taking [of the 4.9 acres] has prevented defendants and intervenor from being able to dispose of the overburden from the [east parcel] to the property on the west"; and that the reduction in fair market value to the combined parcels is $280,333 [$86,000 plus $194,333]." The basis of defendants' and intervenor's claim for severance damages is that the taking eliminated direct access across the railroad tracks between the parcels and requires a longer route of travel for 100,000 truck trips, resulting in significant additional cost to the gravel operation.

After trial, the jury awarded $90,950 for the 4.9 acres and found by special verdict:

"1. That there was a unity of use between the west and

east parcels as of March 2, 1982, and that the taking of the 4.9-acre piece reduced the fair cash market value of the east parcel;

"2. The severance damages for the reduction of the fair market value of the east parcel was $151,833."

The court entered judgment for defendants and intervenor against plaintiff for $242,783 ($90,950 plus $151,833) and awarded defendants attorney fees of $25,000 plus expenses, including expert witness fees, totaling over $9,000. *See* ORS 35.346(2). Plaintiff had already paid into court the sum of $90,950 for the 4.9 acres. The dispute is over the portion of the judgment that awards "defendants and intervenor" severance damages of $151,833 with interest from March 2, 1982, and also awards defendants attorney fees and expert witness fees.

Plaintiff's first seven assignments of error relate to instructions that the court gave or refused to give on "unity of use."[1] Generally, "unity of use" means that

"if two parcels are, in fact, separate and devoted to different and inconsistent uses, the taking of one parcel, valuation aside, will not do damage to the other. If, however, there is a unity of use so that both parcels are essentially one, the taking of one parcel may result in serious severance damages to the other." *Nichols, Law of Eminent Domain,* § 14.26, 14-648 to 14-649 (1985).

As the court stated in *Oregon R. & Nav. Co. v. Taffee,* 67 Or 102, 113, 134 P 1024, 135 P 332, 135 P 515 (1913):

"If the different 'tracts are used together as one property, or are adapted to such use and are more valuable because of such adaptation, then they may be treated as one tract in the estimation of damages; otherwise not.' This is a summary statement of the law by Lewis, Eminent Domain, §§ 697, 698; note, 11 R.A. (N.S.) 996."

---

[1] Plaintiff assigns that the court erred by (1) failing to instruct the jury that as a matter of law defendants and intervenor failed to establish a unity of use; (2) failing to instruct the jury that for severance damages to be recovered between the west and east parcels, they must be "inseparably connected in an integrated permanent use" and that injury to one must "necessarily and permanently" injure the other; (3) instructing the jury that a unity of use exists when two parcels are put to a common use which is the highest and best use of the parcels; (4) instructing the jury that it may consider severance damages; (5) failing to instruct the jury that defendants had the burden of persuasion on the issue of unity of use; (6) failing to instruct the jury that proof by a preponderance of the evidence satisfies the burden of persuasion; and (7) failing to instruct the jury what preponderance of the evidence means.

In *City of Medford v. Bessonette,* 255 Or 53, 59, 463 P2d 865 (1970), the court stated that the intervenor must

> "establish that the lots taken *were used* in connection with the apartment building to satisfy the requirement of unity of use for the recovery of severance damages." (Emphasis supplied.)

■ Plaintiff's first assignment of error is that the court refused to instruct the jury that intervenor had failed as a matter of law to establish unity of use. It also assigns as error that the court instructed the jury that it could consider severance damages because, as plaintiff argues, unity of use did not exist. Whether parcels have a unity of use "ordinarily * * * is a practical question to be decided by the jury or other similar tribunal which passes upon matters of fact * * *." Nichols, *Law of Eminent Domain,* § 14.26, 14-649; *see also* 27 Am Jur 2d, "Eminent Domain," §§ 315-320.

The jury could have found the following from the evidence. In 1976, MPM leased the east parcel from Salem Industrial Park Joint Venture to test its gravel resources, which proved to be substantial. MPM continued to lease the east parcel until 1979, when it purchased it. Removal of the overburden on the east parcel is an essential element of the gravel operation and MPM sought a site suited to that purpose. The west parcel, just across the railroad tracks, was uniquely well situated. To preserve MPM's liquidity for operations, Hill, Staats and Brady bought the west parcel in 1977 in the name of H.S.B., a partnership, which then leased the west parcel to MPM. The lease specified that MPM would use the west parcel only for the deposit of landfill and overburden. In the summer of 1978, MPM began to mine the gravel on the east parcel and to deposit overburden on the west parcel. It obtained a permit from the railroad to haul the overburden across its tracks. The permit had expired at the time of the taking, but the jury could find that defendants or intervenor could have obtained it again. Legitimate business reasons caused suspension of the gravel mining until approximately 1986. Although MPM's lease for the west parcel expired after the taking, the jury could have found that it would have continued to be available to MPM when it resumes mining.

The jury could also have found that although the west parcel is zoned for residential and light industrial use and the

east parcel for heavy industrial use, the two parcels have been used together as one parcel in connection with gravel mining. It could have found that the west parcel was purchased expressly to complement the east parcel to enable MPM to mine the east parcel.

Unity of use is not lacking as a matter of law just because the zoning is different, a railroad lies between the two parcels and must be crossed or the removal of overburden and the mining of gravel is timed to respond to the business and technological needs of the industry and the variations in supply and demand. There was evidence in the record from which the jury could find unity of use between the two parcels.

■ Plaintiff also assigns as error that the court denied its request to instruct the jury that it could not find unity of use unless the east and west parcels were "so inseparably connected in an integrated permanent use that the injury of one of the parcels of land must necessarily and permanently injure the other parcels." The court instructed the jury:

"A unity of use exists when two parcels are being put to a common use which is the highest and best use of the parcels."

Plaintiff argues that "the test of unity of use is a stronger requirement than common use." The court's instruction was sufficient. Moreover, the instruction that a common use must be the "highest and best use of the parcels" could not prejudice plaintiff and it was not error for the court to give this instruction.

Plaintiff assigns as errors that the court did not instruct the jury that defendants have the burden of persuasion on the issue of unity of use, that the burden must be met by a preponderance of the evidence, and that the preponderance of the evidence means the greater weight of the evidence. It argues that OEC 306 and OEC 305 support its assignments. We note, however, that ORS 35.305(2) provides:

"Condemnor and defendant may offer evidence of just compensation, but neither party shall have the burden of proof of just compensation."

■ Whether or not in this case defendants and intervenor had the burden of persuasion with respect to the issue of unity of use, an issue which bears on the question of just compensation, the court's refusal to give the requested

instructions did not prejudice plaintiff. The evidence from which the jury could have found unity of use was strong, and the jury gave a clear affirmative answer to the question whether it found unity of use. We reject plaintiff's assignment of error.

Plaintiff also assigns as errors that the court did not instruct the jury that as a matter of law defendants failed to establish unity of ownership between the parcels and are not entitled to severance damages for the east parcel. Unity of ownership as well as unity of use between the east and west parcels must exist if defendants are to recover severance damages. The parties concur that unity of ownership is a question for the court but disagree on what establishes it.

MPM leased the east parcel in 1976 from its owner, Salem Industrial Park Joint Venture, whose joint venturers were Gelco Pacific (later renamed "Chinook Pacific") and Salem Sand and Gravel, both corporations. Defendants Hill and Brady then each owned one-half of the stock of Chemeketa Industries, which owned all of the stock of Gelco Pacific and all the stock of Salem Sand and Gravel. Hill and Brady, therefore, controlled the joint venture lessor. When MPM purchased the east parcel from Salem Industrial Park Joint Venture on August 21, 1979, Staats Corporation and Gelco Pacific each owned one-half of the stock of MPM. The Staatses owned all of the stock in Staats Corporation. Hill and Brady continued to own Chemeketa Industries, which still owned all of Gelco Pacific. Accordingly, at the time when MPM purchased the east parcel, the Staatses controlled one-half and Brady and Hill together controlled the other half interest in MPM. Before the taking, MPM purchased Brady's stock. On the date of the taking, Staats Corporation owned two-thirds and Gelco Pacific one-third of MPM.

As to the west parcel, Hill, the Staatses and Brady formed H.S.B., a partnership, on September 3, 1977, and on that date purchased the west parcel on which to deposit the overburden from the east parcel. Then, and at the time of the taking, Hill and Brady each owned a one-quarter interest and the Staatses owned a one-half interest in H.S.B. In September, 1977, H.S.B. leased the west parcel to MPM for five years to be used "for landfill purposes and the disposition of

clean fill and overburden." The lease was in effect on the date of the taking.

Plaintiff contends that "unity of ownership" of the east and west parcels depends on identity of record titleholders on the date of taking. It argues that H.S.B., owner of the west parcel, held no interest in MPM, owner of the east parcel and lessee of the west parcel. It argues further that the partners of H.S.B. held no direct interest in MPM. Moreover, on the date of the taking, defendant Brady held no stock or other interest, directly or indirectly, in MPM. Defendants and intervenor, on the other hand, argue that, although there is no unity of record title on the date of taking, there is, nonetheless, "unity of ownership." They contend that "beneficial ownership" determines unity of ownership and that the court should look through the formalities to the actual relationships. They argue that the undisputed evidence shows family and business relationships among the partners of H.S.B. and that those partners owned corporations which owned or controlled MPM in roughly the same proportion as the interests in H.S.B. Defendants also emphasize that the evidence is undisputed that H.S.B. was formed to buy the west parcel for MPM to use for deposit of overburden because MPM needed to preserve its available cash for operating expenses.

No Oregon statute or case resolves what is unity of ownership. The cases elsewhere in the country are divided. Plaintiff's position has the benefit of definiteness. Moreover, it is not unreasonable to assert that people who establish corporations or other forms of business organization for the attendant benefits should also bear the detriments. *See Sams v. Redevelopment Authority,* 431 Pa 240, 244 A2d 779 (1968); *Jonas v. State,* 19 Wis 2d 638, 121 NW2d 235 (1963).

We think that the paramount consideration, however, is the constitutional requirement of just compensation. The substance, rather than the form, of ownership should govern. The court should find "unity of ownership" when there is a substantial identity of ownership and control of the two parcels. The New Jersey Supreme Court has considered the question:

> "In order for the condemnee to recover severance damages for the taking of spatially separate but functionally integrated

property, there must also exist a unity of ownership among all the physically discrete parcels. * * * The question presented is whether strict unity of title in a given entity must exist, or whether ownership is a matter of substance rather than form so that identity of beneficial interest will suffice. This is a novel question in New Jersey. The courts of two of our neighboring states have come to opposite conclusions. In Pennsylvania the legal separateness of the landowners automatically precludes the recovery of severance damages. *Sams v. Redevelopment Authority [supra].* In New York, on the other hand, ownership is seen as a matter of substance, and the real parties in interest are allowed to recover for such losses. *Erly Realty Development, Inc. v. State,* 43 App Div 2d 301, 351 NYS 2d 457, *cert den,* 34 NY 2d 515, 357 NYS 2d 1025, 313 NE 2d 796 (1974).

"This court has been reluctant to pierce the corporate veil in order to allow a corporation to gain an economic advantage. * * * *However, the concept of eminent domain requires that the realities underlying corporate ownership of land be fairly recognized.* Normal business considerations, including due regard for federal tax consequences, may indicate that a bifurcated ownership of the assets of a functionally integrated enterprise is more desirable than ownership by a single entity. *The law should not require businessmen to ignore otherwise sensible economic planning decisions in order to retain their right to full actual damages consequent upon a public taking.*

"* * * There is nothing illegal or contrary to public policy in holding title as a partnership to some of the assets of an enterprise while holding title as a corporation to other of its assets. Therefore, the fact that the condemned parcel was owned by Norfolk while most of the other parcel is owned by Davis White does not alter *the unity of beneficial ownership of the whole* and thus the true unity of loss. We therefore conclude that there is adequate unity of ownership for the purpose of recovering severance damage. *Uniform Eminent Domain Code,* § 1007 (Official Text 1974):

" 'For the purpose of determining compensation under this Article, all parcels of real property, whether contiguous or noncontiguous, that are in *substantially* identical ownership . . . shall be treated as if the entire property constitutes a single parcel.' [Emphasis supplied.]" *Housing Authority of Newark v. Norfolk Realty Co.,* 71 NJ 314, 323, 364 A2d 1052 (1976). (Emphasis supplied.)

On the date of taking, Hill, the Staatses and Brady owned H.S.B. that owned the west parcel; and the Staatses

and Hill, through intermediate corporations, owned all the stock in MPM that owned the east parcel and leased the west parcel from H.S.B. The proportional interests of Hill, the Staatses and Brady in H.S.B. and MPM were identical at the time that each of the parcels was purchased. At the time of the taking they were officers of MPM. Hill, the Staatses and Brady controlled both H.S.B. and MPM before it bought Brady's stock. At the time of the taking, Hill, the Staatses and Brady controlled H.S.B. and Hill and the Staatses controlled MPM. It was not unreasonable for the court to conclude that there was a substantial identity of ownership and control of the two parcels, even though MPM had bought Brady's interest in its parent corporations before the taking. *See Red Apple Restaurant v. State,* 46 Misc 2d 623, 260 NYS 2d 206 (1965). We hold that on this record there was unity of ownership. The court did not err.

Plaintiff's next five assignments of error relate to objections to evidence relevant to the increased cost of the additional hauling required as a result of the taking. The jury could find from the evidence that over a period of 20 years defendants would haul 50,000 truckloads of overburden from the east parcel to the west parcel and would make 50,000 return trips and that as a result of the taking the distance of the haul was several times longer. Plaintiff contends that the evidence was inadmissible, because (1) it is improper to capitalize hauling expenses to calculate severance damages; (2) it is speculative; (3) the proper method of valuation is to establish the difference in value of the east parcel as a gravel site and as an industrial subdivision; and (4) circuity of travel is not compensable. Plaintiff's arguments are not convincing.

The appropriate measure of severance damages to the remaining land is the depreciation in its fair market value caused by the taking. *See, e.g., State Highway Comm. v. Hooper,* 259 Or 555, 560, 488 P2d 421 (1971). At the time of taking, the east parcel was a gravel pit. The jury could have concluded that the east parcel's highest and best use after the taking remained the mining of gravel. Its value depended in large part on the cost of mining the gravel. The cost of removal of overburden is an integral part of that cost. The lengthened access between the east and west parcels results in substantial additional hauling costs. *See Highway Com. v. Central Paving Co.,* 240 Or 71, 76, 399 P2d 1019 (1965); *State Highway Com. v.*

*Burk et al,* 200 Or 211, 235-38, 265 P2d 783 (1954). It is appropriate to capitalize hauling expenses because the value of the east parcel is tied to the income from its gravel resources. *Highway Commission v. Nunes et al,* 233 Or 547, 557-58, 379 P2d 579 (1963). Moreover, the evidence of increased hauling costs was not speculative. The trial court properly admitted the contested evidence.

■ Plaintiff next assigns error to the court's allowing MPM to intervene after the trial commenced. ORCP 33C gives the court discretion to allow any person who has an interest in the matter of litigation to intervene "at any time before trial." ORCP 33C is based on *former* ORS 13.130. There is no relevant substantial difference in the texts. When ORS 13.130 was in effect the trial court had discretion to permit intervention *after* the trial began. *See Barendrecht v. Clark,* 244 Or 524, 528, 419 P2d 603 (1966); *Brown v. Brown/Brown,* 10 Or App 80, 83, 497 P2d 671 (1972).

As with *former* ORS 13.130, ORCP 33C does not bar the court from allowing intervention after commencement of the trial in its discretion. Here the court did not abuse its discretion. It did not wish MPM to pursue a separate claim. The principal dispute between plaintiff and defendants was, for some time, the issue of severance damages. Plaintiff was on notice for months that defendants claimed severance damages and that defendants believed that the two parcels should be considered as one. Although it chose not to join MPM as a party, plaintiff's statement in chambers after the jury had been impaneled about MPM's absence as a party precipitated the motion to intervene. The late intervention did not prejudice plaintiff.

■ Plaintiff also assigns as errors that the court awarded defendants attorney fees and expert witness fees. The expert witness testified on the issue of severance damages. Plaintiff argues that more than 30 days before trial it had offered $115,000 to defendants for the taking of the 4.9 acres of the west parcel and that the jury verdict on the west parcel was for $90,950. Accordingly, plaintiff contends that under ORS 35.346(2)[2] defendants are not entitled to attorney fees and

---

[2] ORS 35.346(2) provides:

"If a trial is held for the fixing of the amount of compensation to be awarded

expert witness fees. Plaintiff's assignments are without merit. Severance damages had been an issue between plaintiff and defendants since the action commenced, and defendants' answer had pleaded severance damages. MPM's intervention removed any possible procedural impediment to consideration of the question rising from MPM's ownership of the east parcel. The city could have offered severance damages to defendants before MPM's intervention or to defendants or intervenors after MPM intervened. *See City of Medford v. Bessonnette, supra,* 255 Or at 62. It made no offer. Accordingly, the court's award of attorney fees is appropriate.[3]

Affirmed.

---

to the defendant owner or party having an interest in the property being condemned, the court shall award said defendant costs and disbursements including reasonable attorney fees and reasonable expenses as defined in ORS 35.335(2) in the following cases, and no other:

"(a) If the amount of just compensation assessed by the verdict in the trial exceeds the highest written offer in settlement submitted by condemner to those defendants appearing in the action at least 30 days prior to commencement of said trial; or

"(b) If the court finds that the first written offer made by condemner to defendant in settlement prior to filing of the action did not constitute a good faith offer of an amount reasonably believed by condemner to be just compensation."

[3] Moreover, the city does not claim that severance damages should have been awarded only to defendants or to intervenor rather than to them jointly or that attorney fees should have been awarded only to intervenor and not to defendants.